## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

DANAHER CORPORATION,

               Plaintiff,

    v.

LEAN FOCUS, LLC, and
DAMON BAKER,

               Defendants.

Civil Action No. _____

## <u>COMPLAINT</u>

1.      Plaintiff Danaher Corporation ("Danaher") brings this action to stop the ongoing, improper use of its confidential information and trade secrets and the improper solicitation of its key personnel by a former executive, Damon Baker, and his company, Lean Focus LLC ("Lean Focus").

2.      Defendant Damon Baker ("Baker") is a former Danaher executive who, for almost a decade, held positions of significant responsibility at Danaher.  He was entrusted with and privy to some of Danaher's most important and confidential information.  He knew the importance of protecting this information from disclosure, and he entered into binding agreements and was required by law to keep this information secret during and after his tenure at Danaher.

3.      And yet, after he left Danaher, Baker apparently absconded with significant amounts of Danaher's confidential information and used a new company that he controls, Defendant Lean Focus, to improperly use this information.

4.      Through Lean Focus, Baker has embarked on a scheme to co-opt Danaher's proprietary business model and methods.  Rather than undertake the work of developing their own business model and methods, and the concomitant time and expense associated with that

work, Lean Focus and Baker have cut corners by using Danaher's well-developed business models and marketing, using the Danaher name and proprietary business model, and poaching Danaher personnel.  Lean Focus and Baker's knock-off product, which they offer on a consulting basis to the public, piggybacks on Danaher's multi-million-dollar investment.

5.     Danaher has invested substantial resources over many years to develop its Danaher Business System ("DBS"), and Danaher carefully protects the trade secrets and other confidential information that comprise DBS.

6.     Danaher derives independent economic value from its trade secrets not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure and use.  Danaher was one of the first companies in North America to adopt kaizen, which led to the development of DBS, which is the heart of Danaher's company, culture, and success.  Danaher has invested a tremendous amount of time and money to develop its trade secret DBS, which has allowed Danaher to maintain its position as a Fortune 200 company and a leader and innovator in the global science and technology space, with over 30 operating companies employing over 67,000 associates.

7.     Between 2017 and the present, Lean Focus and Baker have heavily recruited and hired multiple current and former Danaher-affiliated employees (i.e., individuals currently or previously employed by Danaher, a Danaher spin-off company, or a Danaher operating company) who were or have been intimately involved with Danaher's DBS function and, therefore, possess extensive confidential and trade secret information relating thereto, including the design, tools, processes, and implementation of DBS.  The targeted employees include Lynda Banig, Lika Dutta, Rene Frauenknecht, Carrie Haas-Vukosovich, April Lee, Gordon Logan, Dave Smith, Guy Schiller, and Kathryn Strasburg.  These employees, as a condition of their

employment, had nondisclosure obligations and/or duties of loyalty to Danaher and/or its subsidiaries and affiliates, including operating companies.

8.     Baker, and the former Danaher-affiliated employees hired by Lean Focus and Baker, are currently, and in the future will be, engaged in the development, implementation, and operation of programs that are the same as or substantially similar to DBS.  These individuals cannot perform their duties for Lean Focus without utilizing or disclosing Danaher's confidential information and trade secrets.  Indeed, Baker has repeatedly and publicly offered, via the Lean Focus website or various public social media accounts, to reveal to his new potential customers the "secret sauce" that drives Danaher's success and disclose and discuss the inner workings of DBS.

9.     Worse still, on information and belief, Baker secreted confidential and trade secret Danaher materials before leaving Danaher.  In particular, on information and belief, Baker loaded confidential and trade secret Danaher materials, including contact lists and DBS materials, onto thumb drives before leaving Danaher and failed to return those materials in full.  After Danaher demanded that any of its information in Baker's possession be preserved and returned, some of the devices were wiped clean before Baker returned them.

10.     Accordingly, Danaher files this action to protect itself from further irreparable harm by seeking an injunction that orders Lean Focus and Damon Baker to stop using, disclosing, and misappropriating Danaher's confidential information and trade secrets, to halt Lean Focus and Damon Baker's ongoing raiding of Danaher-affiliated employees and their intentional, wrongful interference with Danaher's contracts with its employees and its operating companies' employees, and to recover the significant financial damages that Danaher has suffered as a result of defendants' misconduct.

## THE PARTIES

11.     Plaintiff Danaher Corporation is a Delaware corporation with its principal place of business at 2200 Pennsylvania Avenue, NW, Suite 800W, Washington, DC 20037.

12.     Defendant Lean Focus LLC is an Illinois limited liability company with its principal place of business at 215 S. Century Ave., Suite 124, Waunakee, Wisconsin, 53597.

13.     Damon Baker is a Wisconsin citizen and resides in Oregon, Wisconsin.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Danaher's claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, *et seq.*, arises under federal law.  This Court has supplemental subject matter jurisdiction over Danaher's remaining state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Danaher's federal DTSA claim that they form part of the same case or controversy and derive from a common nucleus of operative fact.

15.     The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  Plaintiff Danaher is a Delaware corporation with its principal place of business in Washington, DC.  Defendant Damon Baker is a Wisconsin citizen.  Defendant Lean Focus is an Illinois limited liability company whose sole member is Baker, a Wisconsin citizen. The amount in controversy, exclusive of costs and interest, is in excess of $75,000.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Baker and Lean Focus reside in the district, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this district.

## FACTUAL ALLEGATIONS

**A.     Danaher Spent Significant Resources To Develop a Proprietary Business Model**.

17.     Danaher is a diversified, global company specializing in the fields of science and technology, with more than 67,000 employees working directly for Danaher or one of its more than 30 operating companies.  Danaher owns more than 30 operating companies in the diagnostic, life sciences, dental, environmental, and applied solutions markets.

18.     Each Danaher operating company utilizes DBS, a key factor that differentiates Danaher and its operating companies from other businesses.  DBS combines the core principles of growth, leadership, and lean to drive every aspect of Danaher's culture, guide what Danaher does, and measure Danaher's execution on its goals.  DBS is the foundation for continuous improvement and change at Danaher and its operating companies.  DBS applies at all levels and functions within the Danaher organization, from materials, tools, manufacturing, innovation, operations, and reliability to transactions, sales, and marketing.  DBS is critical to quality, delivery, cost, and innovation at each Danaher operating company.  Over many years, Danaher has developed a series of specific DBS tools, processes, and applications that are employed to improve Danaher's operating companies.

19.     Danaher employees are trained in the principles and application of the DBS.  Certain dedicated personnel serve as DBS experts, and these individuals regularly provide DBS training to employees in Danaher's operating companies.  Individuals specializing in the DBS processes and activities work in what is known as the "DBS Office" of Danaher or within DBS leadership at Danaher operating companies.

20.     Since adopting the Danaher name in 1984, Danaher has dedicated tens of millions of dollars and thousands of person-hours to develop, maintain, and improve DBS.

**B.**     **Danaher Maintains Confidential Information About DBS, and It Shares That Information Only on a Need-To-Know Basis**.

21.     Because DBS is critical to Danaher's business, Danaher and its operating companies undertake significant efforts to maintain DBS and its key features in confidence and to protect DBS from disclosure to outside parties and competitors.  These measures include, for example, implementing physical and electronic security measures, such as employing locks on physical offices and facilities, as well as using passwords, segregating confidential information, and employing security time-outs on computers and electronic equipment.  Danaher and its operating companies also maintain handbooks and procedures that remind, implement, and enforce security protocols, and conduct regular training of personnel concerning those safeguards.

22.     Danaher and its operating companies also use contractual protections to maintain the confidentiality and secrecy of its confidential information and trade secrets.  Baker, like other Danaher-affiliated employees, contractually committed to promises of confidentiality.  In particular, Baker signed an Agreement Regarding Competition and Protection of Proprietary Interests ("Proprietary Interest Agreement") at the outset of his employment with Danaher.

23.     Among other things, in the Proprietary Interest Agreement, Baker agreed:

> At all times during and after the termination of my employment or relationship with the Company [defined to include Danaher and its subsidiaries and/or affiliates], I will not, without the Company's prior written permission, directly or indirectly for any purpose other than performance of my duties for the Company, *utilize or disclose to anyone outside of the Company any Confidential Information*, or any information received by the Company in confidence from or about third parties, *as long as such matters remain trade secrets or confidential*.

Proprietary Interest Agreement, ¶ 1.b (emphases added).  "Confidential Information" is defined as "the trade secrets and other confidential information of the Company which is not generally

known to the public[.]"  *Id*. ¶ 1.a.  "Examples of Confidential Information include, but are not limited to, customer and supplier identification and contacts, information about customers, . . . business and customer strategy, techniques, . . . *information regarding all or any portion of the Danaher Business System*," among other things.  *Id.* ¶ 1.a (emphasis added).

24.     Baker further promised not to divert any Danaher property for non-business purposes and to return all Danaher property when they leave the company.  Among other things, Baker committed as follows:

> I agree that all tangible materials (whether originals or duplicates) including but not limited to, notebooks, computers, files, reports, proposals, price lists, lists of actual or potential customers or suppliers, talent lists, formulae, prototypes, tools, equipment, models, specifications, technical data, methodologies, research results, test results, financial data, contracts, agreements, correspondence, documents, computer disks, software, computer printouts, information stored electronically, memoranda, and notes, in my possession or control which in any way relate to the Company's business and which are furnished to me by or on behalf of the Company or which are prepared, compiled or acquired by me while working with or employed by the Company shall be the sole property of the Company.  *I will at any time upon the request of the Company and in any event promptly upon termination of my employment or relationship with the Company, but in any event no later than two (2) business days after such termination, deliver all such materials to the Company and will not retain any originals or copies of such materials*, whether in hard copy form or as computerized and/or electronic records.   Except to the extent approved by the Company or required by my bona fide job duties for the Company, I also agree that *I will not copy or remove from the Company's place of business or the place of business of a customer of the Company, property or information belonging to the Company or the customer or entrusted to the Company or the customer*.  In addition, I agree that *I will not provide any such materials to any competitor of or entity seeking to compete with the Company unless specifically approved in writing by the Company*.

Proprietary Interest Agreement, ¶ 2 (emphases added).

25.     Baker also promised not to encourage Danaher employees to leave Danaher or its

operating companies:

> I agree that *during my employment or relationship with the Company and for a period of 12 months thereafter, I will not, nor will I assist any third party to, directly or indirectly, (i) raid, hire, solicit, encourage or attempt to persuade any employee or independent contractor of the Company [defined to include Danaher and its subsidiaries and/or affiliates], or any person who was an employee or independent contractor of the Company during the 6 months preceding the termination of my employment or relationship with the Company, who possesses [sic] or had access to Confidential Information of the Company, to leave the employ of or terminate a relationship with the Company; (ii) interfere with the performance by any such persons of their duties for the Company*; or (iii) communicate with any such persons for the purposes described in Paragraph 6(d)(i) and (ii).

Proprietary Interest Agreement, ¶ 6.d (emphasis added).

26.     Baker further acknowledged and agreed that a breach or threatened breach of the

Agreement will irreparably injure Danaher:

> In the event of a breach or threatened breach of this Agreement by me, I acknowledge and agree that the Company [defined to include Danaher and its subsidiaries and/or affiliates] will face *irreparable injury* which would be difficult to calculate in monetary terms and for which damages would be an inadequate remedy, *I agree that the Company shall be entitled, in addition to remedies otherwise available at law or in equity, to obtain and enforce immediately temporary restraining orders, preliminary injunctions and final injunctions enjoining such breach or threatened breach. Should the Company successfully enforce any portion of this Agreement before a trier of fact, the Company shall be entitled to receive and recover from me all of its reasonable attorney's fees, litigation expenses and costs incurred as a result of enforcing this Agreement against me.*

Proprietary Interest Agreement, ¶ 9 (emphases added).

## C.     Baker's Danaher Tenure and Departure

27.     Damon Baker worked in various key roles at Danaher and its operating companies

for approximately nine years, including: Senior Corporate Director of the Global DBS Office in

Madison, Wisconsin; General Manager of Danaher Corporation at Orascoptic in Middleton, Wisconsin; Corporate Director at the Global Danaher Business System Office in Chicago; and Global Director of the Danaher Business System, Product Identification Platform at VideoJet Technologies in Chicago.

28.     As a Senior Director and Master Trainer of DBS, Baker had access to and regularly used a variety of confidential information, including information related to DBS fundamentals, Problem Solving Process (PSP), Transaction Process Involvement (TPI), Visual & Daily Management Process, Kaizen Event Basics, Voice of the Customer, DBS Tool Certification Process, Danaher Reliability System (DRS), Variation Reduction Kaizen (VRK), DBS Compliance for medical device manufacturing, Lean Conversion Accounting, Danaher Materials Process (DMS), and all DBS Leadership Tools, programs, and courses.

29.     On or about July 12, 2012, Baker signed the Proprietary Interest Agreement.

30.     On or about January 30, 2014, Baker signed Danaher's Nondisclosure and Assignment Agreement ("Nondisclosure Agreement"), which required Baker to protect and maintain the confidentiality of confidential information and trade secrets.

31.     In particular, this Nondisclosure Agreement required that "During and after my employment, I will not directly or indirectly utilize or disclose to anyone outside of the Company trade secrets or other confidential information of the Company . . . Examples of confidential information include, but are not limited to, customer and supplier lists, pricing, margins, business and marketing plans and strategy, technical know-how, formulae, processes, designs, manufacturing techniques and software."  Nondisclosure Agreement, ¶ 1.

32.     Under the Nondisclosure Agreement, Baker also promised, "at the Company's request or upon termination of my employment, [to] return all originals and copies of Company property to the Company."  Nondisclosure Agreement, ¶ 2.

33.     Additionally, the Proprietary Interest Agreement required Baker to adhere to his non-disclosure obligations for 36 months after he left Danaher's employment.

34.     On September 12, 2016, while on assignment with a Danaher operating company, and as an employee of and representing Danaher while conducting a kaizen, Baker represented on his public LinkedIn account that he was employed by Eaton Corporation ("Eaton").  That same day, Baker exported his contact list to a spreadsheet and PST file and used USB devices.

35.     That same, day, on September 12, 2016, Damon Baker left his employment at Danaher.

**D.    Damon Baker Took Danaher Confidential Information and Trade Secrets with Him after He Left Danaher.**

36.     No later than September 19, 2016, Baker joined Eaton as Senior Vice President of Quality & Eaton Business Excellence.  Eaton is a global power management company with almost $22 billion in sales in 2018.  It has approximately 99,000 employees and sells products to customers in more than 175 countries.

37.     On information and belief, Baker worked at Eaton for approximately five months. During that time, Danaher expressed to Eaton concerns about Baker's departure from Danaher and his intended role with Eaton.  These concerns were prompted by various actions taken by Baker, including his updating of his online resume on LinkedIn to show a Danaher DBS tool and examples of kaizen results for specific Danaher operating companies.

38.     Eaton assured Danaher that it had received no Danaher confidential or trade secret information from Baker.

39.     Baker was far cagier.  On information and belief, upon his departure from Danaher, Baker retained Danaher's confidential information that remains at large.  Analysis of Baker's pre-departure computer activities suggests he downloaded a significant amount of information before leaving Danaher.

40.     Baker did not return any USB devices to Danaher immediately after his employment.  He eventually returned some USB devices—after a follow-up letter from Danaher detailing the nine USB devices he had used on his work laptop.  Baker represented to Danaher (through a letter from Eaton to Danaher) that he did not recall using 8 of the 9 devices in the weeks leading up to his separation from Danaher.  To date, Baker has failed to return a majority of these devices to Danaher.

41.     When Danaher confronted Baker about this suspicious behavior and demanded that its data be returned, Baker provided Danaher with devices that recently had been wiped clean—including nearly 53,000 files taken off of one external hard drive.  The drive had been wiped clean days after Baker received a letter requesting the return of Danaher information and devices, and after Danaher had advised Baker that no data were to be wiped before the devices were returned.  Baker's returned company iPhone also had been completely wiped clean. Danaher never instructed Baker to wipe these devices and, instead, requested that Baker certify that he return "all copies of all tangible materials [he] received from Danaher."

42.     In addition, part of Baker's Danaher computer was infected with ransomware, Baker used DropBox on at least one of his devices, and another of Baker's USB devices had a 2014 folder relating to Salesforce training at Danaher but the folder had been deleted.

43.     After his departure from Danaher, Baker refused to provide Danaher with images of his computers, despite request.

44.     Baker's apparent effort to conceal his pre-departure, computer activities was not, however, entirely successful.  One of the thumb drives that Baker returned to Danaher included a listing of files labeled "personal."  Those files were not just "personal" to Baker but, instead, contained confidential Danaher files and information.

45.     The wiping of these devices, Baker's inconsistent stories about what he removed and retained from Danaher, and the remaining evidence that (contrary to Baker's claims) included Danaher-owned materials, strongly indicates that Danaher's confidential and trade secret information was, and is, saved elsewhere for Baker's later use and exploitation.

46.     Baker also appears to have taken with him a contacts file that included hundreds of entries, most with Danaher affiliations, and many contacts at Danaher operating companies.  On information and belief, Baker exported his contact list to a spreadsheet and PST on September 12, 2016, his last day of employment at Danaher.  On information and belief, Baker copied that contacts list, as suggested by his subsequent targeting of current and former Danaher-affiliated employees.

47.     In light of the unauthorized wiping of these materials, Danaher raised further questions with Baker's subsequent employer (Eaton).  A few months later, and approximately five months after Baker had started at Eaton, Danaher learned that Baker no longer was employed by Eaton and was searching for another job.

48.     According to Baker's public LinkedIn account, Baker left Eaton in February 2017.

**E.      Baker's Decision To Create a Knock-off DBS Consulting Company, Lean Focus.**

49.     According to his public internet profile, in February 2017, the same month that Baker left Eaton, Baker founded Lean Focus.  (In fact, public records show that Baker had founded Lean Focus years earlier, for reasons he has not shared in the marketing materials suggesting the company is only two years old.)  Baker has been, and is, the CEO and President of Lean Focus, as well as its sole, managing member.

50.     Lean Focus is set up as a DBS clone.  Lean Focus's LinkedIn page touts a "Lean Focus Business System" that mirrors the elements of DBS:

> At Lean Focus, we help businesses overcome their biggest challenges by transforming them for the better, and for the long-term.  A "who's who" of global leaders in every industry, our clients include some of the world's most respected brands and several members of the Fortune 1000.

> Applied with our proven, hands-on approach, the Lean Focus Business System™ utilizes 5 Key Elements—Growth, Lean, Leadership, Foundation, and Guiding Principles—to build the lasting organizational and cultural infrastructure it takes to transform a business for good.  Whatever challenges your company is facing, if it's negatively impacting your bottom line, we can help.

51.     Since Baker's departure from Danaher, Lean Focus has engaged in a concerted and coordinated effort to recruit and hire Danaher-affiliated employees, including employees working in Danaher's DBS Office.

52.     Given Baker's extended tenure with Danaher, he (and therefore Lean Focus) knows that Danaher-affiliated employees consistently enter into agreements that protect the confidentiality of Danaher's confidential information and trade secrets, and impose prohibitions on accepting competitive employment, soliciting Danaher or Danaher operating company employees, and diverting Danaher property.

53.     Nonetheless, in the past three years, there has been an outflow of current or former employees from Danaher and/or its operating companies to Lean Focus, including employees from Danaher's DBS Office who are highly knowledgeable and experienced in DBS.

54.     Indeed, advertised employment posts by Baker on LinkedIn have explicitly required "former Danaher" experience:



*Lean Focus Hires of Current and Former Danaher-affiliated Employees*

55.     In approximately June 2017, former Danaher operating company employee Lynda Banig joined Lean Focus.  Banig previously had served as a Global Growth Leader at Danaher operating company Beckman Coulter.

56.     No later than September 2017, Danaher operating company employee April Lee left Danaher and joined Lean Focus.  Before joining Lean Focus, Lee was a Director of DBS, Growth, at Danaher operating company Nobel Biocare.  As a DBS leader, she had access to Danaher trade secrets and confidential information.

57.     In approximately October 2017, Kathryn Strasburg left Danaher spin-off Fortive and joined Lean Focus.  At the time, Strasberg was a training and lean consultant at Fortive and previously had served as a DBS and Quality Director at Hach, another Danaher operating company.

58.     In approximately October 2017, former Danaher employee Rene Frauenknecht joined Lean Focus.  While at Danaher for approximately ten years, Frauenknecht held various positions, including Vice President of Operations, DBS Corporate Director, Director of Operations, and DBS Manager at Danaher and several Danaher operating companies.

59.     In approximately November 2017, former Danaher employee Carrie Haas-Vukosovich joined Lean Focus.  While at Danaher, Haas-Vukosovich served as Director of Corporate Human Resources.  As a former Director of Corporate Human Resources, Haas-Vukosovich was aware of both how to recruit Danaher-affiliated employees for DBS skills and how to place these former Danaher-affiliated employees at a Lean Focus client who might want to jumpstart or otherwise benefit from a function like DBS.

60.     In 2019, another Danaher operating company human resources employee, Guy Schiller, joined Lean Focus.  Schiller had been with Danaher operating companies, including VideoJet Technologies, for approximately 12 years and, like Haas-Vukosovich, had intimate knowledge about how to recruit Danaher-affiliated employees and use their skills for Lean Focus's commercial gain.

61.     In 2019, former Danaher operating company employee Lika Dutta joined Lean Focus.  At Danaher, Dutta was a General Manager and previously had served as Global Growth Leader in Sales and Marketing in various Danaher operating companies, where she implemented DBS tools.

62.     In 2019, Dave Smith joined Lean Focus.  Smith previously had served as a Vice President of Engineering and Vice President of GM Customer Teams at former Danaher operating company Jacob Vehicle Systems.

63.     Also in 2019, Lean Focus announced that it had hired former Danaher operating company employee Gordon Logan.  Logan previously had served as the Senior Vice President of Research and Development at SCIEX, a Danaher operating company.

**F.     Lean Focus Markets Itself Using the Danaher Name and Uses a "Lean Focus Business System" That Mimics the Danaher Business System.**

64.     Lean Focus has utilized, and continues to utilize, a business strategy that relies on unlawful and unfair business practices—using Baker's misappropriation of trade secrets and other confidential information to piggyback on Danaher's investment to compete against Danaher. Had Lean Focus not misused these trade secrets and other confidential information, Lean Focus would have had to invest significant time and resources into developing a business system. Without Danaher's confidential information, Lean Focus would not have been able to enter the market as quickly as it did, or at all.  Nor would Lean Focus have been able to attract as clients Danaher competitors, such as Siemens.

65.     The Lean Focus Business System mirrors the structure of the Danaher Business System.  Lean Focus publicly advertises the Lean Focus Business System as follows:



66.     This grid mimics the grid structure and topics within DBS.  DBS relies on the same three pillars, and individual tools within the grid structure of the Lean Focus Business System emulate or exactly mirror individual tools within DBS.

67.     Lean Focus explicitly markets itself using Danaher's name and Business System. Indeed, the Lean Focus website caption is "Danaher Business Solutions and Lean Consulting," as shown below:



68.    Even the Lean Focus logo is evocative of both Danaher's logo and the logo of one of Danaher's spin-off companies, Fortive:



69.    Baker's Twitter account, which also serves as a Lean Focus account with the handle @Leanfocus1, promotes Lean Focus events using and emphasizing the Danaher name:



**Damon Baker** @Leanfocus1 · 19 Sep 2018
Learn A3 Problem Solving (PS2), Daily Management, and Strategy Deployment from a former 10 year Danaher Business System Executive.

ENROLL NOW - NOVEMBER 12-16TH ($1,995 & $1,095 for 3 or more people): eventbrite.com/e/lean-focus-l…



**Damon Baker** @Leanfocus1 · 5 Dec 2017
The Lean Focus team averages over 20 years of experience in the areas of Growth, Lean, and Leadership with proven business systems in companies like Danaher, Boeing, and John Deere.  Contact Lean Focus to learn how we can rapidly transform your business.  lnkd.in/erGYUq3

70.     Baker, through his Lean Focus Twitter handle, explicitly offers to disclose to third

parties the Danaher "secret sauce":



71.     Baker has answered Twitter solicitations about DBS by, again, offering to

disclose information about DBS:



72.     Baker's retweets emphasize that Baker has formed a company in Lean Focus of

"nearly exclusively of ex-Danaher employees":



73.     Lean Focus has used the Danaher name and DBS to secure business from numerous large companies, including actual and potential Danaher competitors.  According to Lean Focus's website, it has worked, or currently works, with Bemis, Boeing, Honeywell, Inogen, IDEX Corporation, Life Fitness, Polaris, Rue La La, Siemens, and Straumann.

74.     But for Lean Focus and Baker's improper use of Danaher trade secrets and confidential information, and its poaching of current and former Danaher-affiliated employees, including employees with DBS experience, none of these well-established businesses would engage a small, up-start consulting company.  Lean Focus and Baker's misconduct has given them an unfair head start in their new business and damaged Danaher.

75.     In addition to damages caused by Defendants' past misconduct, Danaher will continue to suffer serious and significant damages in the future if Defendants continue to misuse Danaher's trade secrets and other confidential information.  Although damages are necessary to compensate Danaher for harm already suffered, they will not provide an adequate remedy at law for ongoing future misconduct.

## COUNT I
## BREACH OF CONTRACT (PROPRIETARY INTEREST AGREEMENT)
### *Against Defendant Baker*

76.     On or about July 12, 2012, Baker signed the Proprietary Interest Agreement,

which forbade the disclosure of confidential information and trade secrets, as well as the

solicitation of Danaher-affiliated employees for a year after termination from Danaher.

77.     In particular, upon signing the Proprietary Interest Agreement, Baker agreed

> At all times during *and after* the termination of my employment or
> relationship with the Company [defined to include Danaher and its
> subsidiaries and/or affiliates], *I will not*, without the Company's
> prior written permission, directly or indirectly for any purpose
> other than performance of my duties for the Company, *utilize or
> disclose to anyone outside of the Company any Confidential
> Information*, or any information received by the Company in
> confidence from or about third parties, as long as such matters
> remain trade secrets or confidential.

Proprietary Interest Agreement, ¶ 1.b (emphases added).

78.     "Confidential Information" is defined in the Proprietary Interest Agreement as

"the trade secrets and other confidential information of the Company which is not generally

known to the public[.]"  *Id.* ¶ 1.a.  "Examples of Confidential Information include, but are not

limited to, customer and supplier identification and contacts, information about customers, . . .

business and customer strategy, techniques, . . . *information regarding all or any portion of the

Danaher Business System*," among other things.  *Id.* (emphasis added).

79.     Yet, Baker repeatedly has disclosed to Lean Focus and others information about

the Danaher Business System, and he has used DBS to build Lean Focus and even promote Lean

Focus on its website caption as "Danaher Business Systems & Lean Consulting."

80.     Baker also agreed in the Proprietary Interest Agreement that "all tangible

materials . . . which in any way relate to the Company's business and which are furnished to me

by or on behalf of the Company . . . shall be the sole property of the Company." Proprietary Interest Agreement, ¶ 2.  And he agreed, "promptly upon termination of my employment or relationship with the Company, but in any event no later than two (2) business days after such termination, [he would] deliver all such materials to the Company and will not retain an originals or copies of such materials, whether in hard copy form or as computerized and/or electronic records." *Id.*

81.     Baker did not return all such materials to Danaher within two days of his termination.

82.     Baker also agreed in the Proprietary Interest Agreement that "for a period of 12 months" after this employment with Danaher, he would not "raid, hire, solicit, encourage or attempt to persuade any employee or independent contractor of the Company [defined to include Danaher and its subsidiaries and/or affiliates], or any person who was an employee or independent contractor of the Company during the 6 months preceding the termination of my employment or relationship with the Company, who possesses [sic] or had access to Confidential Information of the Company, to leave the employ of or terminate a relationship with the Company[.]" Proprietary Interest Agreement, ¶ 6.d.

83.     Nonetheless, Baker solicited April Lee within twelve months of Baker's employment with Danaher.  Lee had access to Confidential Information during her employment at a Danaher operating company.

84.     Baker and Lean Focus repeatedly have used confidential and trade secret information of Danaher, and they also have solicited Danaher and Danaher operating company employees within a year of Baker's departure from Danaher.

85.     Because of Baker's breaches, Danaher has suffered, and continues to suffer, damages, including loss of profits, a loss of market advantage, a decline in the market value of its products, and loss of the inherent value of its trade secrets and its other confidential information.

## COUNT II
## BREACH OF CONTRACT (NONDISCLOSURE AGREEMENT)
### *Against Defendant Baker*

86.     Danaher hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

87.     On January 30, 2014, Baker signed a Nondisclosure and Assignment Agreement that expressly required Baker to protect and maintain the confidentiality of confidential information and trade secrets and prohibited Baker from utilizing or disclosing confidential information after his termination from Danaher.

88.     In particular, the Nondisclosure Agreement required that "During and after my employment, *I will not directly or indirectly utilize or disclose to anyone outside of the Company trade secrets or other confidential information of the Company* . . . Examples of confidential information include, but at not limited to, customer and supplier lists, pricing, margins, business and marketing plans and strategy, technical know-how, formulae, processes, designs, manufacturing techniques and software."  Nondisclsoure Agreement, ¶ 1 (emphasis added).

89.     The Nondisclosure Agreement also required that Baker "will at the Company's request or upon termination of my employment, *return all originals and copies of Company property to the Company*."  *Id.* ¶ 2 (emphasis added).

90.     Baker both utilized and disclosed trade secrets and confidential information of Danaher, including DBS and contact lists.  Baker also repeatedly has disclosed to Lean Focus

and others information about DBS, and he has used DBS to build Lean Focus and even promote

Lean Focus on its website caption as "Danaher Business Systems & Lean Consulting."

91.     Baker further failed to return all of Danaher's property to Danaher.

92.     Because of Baker's breaches, Danaher has suffered, and continues to suffer,

damages, including loss of profits, a loss of market advantage, a decline in the market value of its

products, and loss of the inherent value of its trade secrets and its other confidential information.

**COUNT III**
**TORTIOUS INTERFERENCE WITH CONTRACT AND/OR PROSPECTIVE
ECONOMIC ADVANTAGE**
*Against Defendants Lean Focus and Baker*

93.     Danaher hereby repeats, reiterates, and re-alleges each and every allegation in

each of the preceding paragraphs as if fully set forth herein.

94.     Danaher has contracts or prospective contractual relationships with third party

employees or business partners, consultants, collaborators, and customers.

95.     Lean Focus and Baker have intentionally interfered with those relationships by

poaching current and former Danaher and Danaher operating company employees with whom

Danaher maintains a contractual relationship, and by intentionally interfering with Danaher's

business partners, consultants, collaborators, and customers by promoting a Lean Focus System

that is a reproduction of the DBS and by using improperly obtained, confidential materials to do

so.

96.     This interference has caused Danaher damages, including lost current and future

business, as well as revenue from the productivity of employees who have been poached by Lean

Focus and Baker.

97.     Lean Focus and Damon Baker had no justification or privilege to interfere in

these present or prospective contractual relationships.

**COUNT IV**
**CONVERSION**
*Against Defendants Lean Focus and Baker*

98.     Plaintiff Danaher hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

99.     Danaher's trade secrets and confidential information are Danaher's property.

100.     After his employment at Danaher ended in September 2016, Baker took intentional control of, and took, Danaher's property without Danaher's consent, which resulted in serious interference with the rights of Danaher to possess that property.

101.     In particular, Baker took materials related to DBS and contact lists.

102.     Baker has not returned all of this property.

103.     Even if there were no valid and enforceable agreements between Danaher and Baker (which there are), Baker is liable for conversion of Danaher's property.

104.     Defendant Baker exercised control over Danaher's property for his own benefit by acquiring and using Danaher's trade secrets and confidential information for the development and operation of Lean Focus's business.

105.     Defendant Lean Focus exercised control over Danaher's property for its own benefit by acquiring and using Danaher's trade secrets and confidential information for the development and operation of Lean Focus's business.

106.     Danaher did not authorize Baker or Lean Focus's use of Danaher's trade secrets and confidential information.

107.     Baker's exercise of control over Danaher's trade secrets and confidential information was a wrongful taking, because Baker knew that he acquired that information under circumstances giving rise to a duty to maintain the secrecy of that information or limit its use.

108.    Lean Focus's exercise of control over Danaher's trade secrets and confidential information was a wrongful taking, because at the time of its use, Lean Focus knew or had reason to know that the knowledge of the trade secrets and confidential information was derived from or through Baker, who owed a duty to Danaher to maintain the secrecy of that information and limit its use.

109.    Baker and Lean Focus acted with malice and with an intentional disregard of Danaher's rights.  Baker signed two separate contracts (the Proprietary Agreement and Nondisclosure Agreement) and was well aware that he was contractually obligated to return Danaher's property, including property related to DBS and contact lists.  Lean Focus, founded by Baker and building its business based on the stolen Danaher information that Baker purloined, similarly acted with malice and with an intentional disregard of Danaher's rights.

110.    As a direct and proximate cause of Baker and Lean Focus's conduct, Danaher has suffered, and continues to suffer, damages, including loss of profits, a loss of market advantage, a decline in the market value of its products, and loss of the inherent value of its trade secrets and confidential information.  As a direct and proximate result of Baker and Lean Focus's conduct, Baker and Lean Focus also have been unjustly enriched.  Danaher is entitled to damages for its actual losses and to disgorgement of Baker and Lean Focus's unjust enrichment.  Danaher also is threatened with additional and ongoing injuries, including further loss of profits, loss of market advantage, and loss of the inherent value of its trade secrets and confidential information, unless Baker and Lean Focus are enjoined and restrained by an order of this Court.  Danaher is entitled to an order requiring Baker and Lean Focus to purge Danaher's trade secrets and confidential information and enjoining Baker and Lean Focus from any further use or disclosure of that information.

## COUNT V
## BREACH OF THE DUTY OF LOYALTY
### *Against Defendant Baker*

111.     Danaher hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

112.     Baker was a key employee at Danaher and, as such, had a fiduciary relationship with Danaher.  Baker's responsibilities included multiple high-level roles, such as Senior Corporate Director, General Manager, and Global Director.  Baker highlights his key role at Danaher in his public LinkedIn biography, writing, "During my 9 years at Danaher, one of my mentored operating companies was nominated Most Improved Plant, and one of my factories won Best Plant Worldwide 2 years in a row."

113.     As a Senior Director of DBS, Baker had access to and regularly used a variety of confidential information, including information related to DBS fundamentals, Problem Solving Process (PSP), Transaction Process Involvement (TPI), Visual & Daily Management Process, Kaizen Event Basics, Voice of the Customer, DBS Tool Certification Process, Danaher Reliability System (DRS), Variation Reduction Kaizen (VRK), DBS Compliance for medical device manufacturing, Lean Conversion Accounting, Danaher Materials Process (DMS), and all DBS Leadership Tools, programs, and courses.

114.     Even if there were no valid and enforceable agreements between Danaher and Baker (which there are), Baker is liable for breaching his fiduciary duty not to disclose or use Danaher's trade secrets or confidential information.

115.     After leaving Danaher, Baker breached that fiduciary duty when he made, and continues to make, unauthorized use of Danaher's confidential information in the form of DBS materials and contact lists.

116.     Baker breached that duty by disclosing and using trade secrets and confidential information for the development and operation of Lean Focus, a company that pitches its services to Danaher's competitors and, in exchange for consulting fees (in which Baker shares), offers to help Danaher's competitors improve their market position and unfairly compete against Danaher and its portfolio companies.

117.     As a direct and proximate result of Baker's breach of his fiduciary duty, Danaher has suffered, and continues to suffer, damages, including loss of profits, loss of market advantage, a decline in the market value of its products, and loss of the inherent value of its trade secrets and confidential information.  As a direct and proximate result of Baker's conduct, Baker also has been unjustly enriched.  Danaher is entitled to damages for its actual losses and disgorgement of Baker's unjust enrichment.

118.     Although Danaher is entitled to damages to compensate it for the harm it already has suffered, for the reasons set forth above, these damages will not provide an adequate remedy at law for ongoing future breaches of Baker's fiduciary duty to Danaher.  Danaher is threatened with additional and ongoing injuries, including further loss of profits, loss of market advantage, and loss of the inherent value of its trade secrets and confidential information, unless Baker is enjoined and restrained by an order of this Court.  Danaher is entitled to an order requiring Baker to purge Danaher's trade secrets and confidential information, and enjoining Baker from any further use or disclosure of that information and any further breach of his fiduciary duty.

**COUNT VI**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
*Against Defendant Lean Focus*

119.     Danaher hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

120.    Baker breached his fiduciary duty to Danaher.

121.    After termination of Baker's employment with Danaher in September 2016, Baker had an ongoing fiduciary duty not to use for his own benefit or disclose to third persons Danaher's trade secrets or other confidential information.

122.    Baker breached that duty by disclosing and using trade secrets and other confidential information for the development and operation of Lean Focus, a company directly competing with Danaher and holding itself out for hire by other actual and potential Danaher competitors.

123.    Lean Focus knowingly participated in the breach by receiving and misusing the trade secrets and confidential information that Baker misappropriated.  Lean Focus has used and continues to use that information in the development of its business and operations, and to exploit that information for its own commercial advantage.

124.    Lean Focus's participation in the breach caused harm to Danaher.  Lean Focus's misuse of Danaher's trade secrets and confidential information to enter the market has harmed Danaher in the form of loss of market advantage, a decline in the market value of its products, and loss of the inherent value of that information.  As a direct and proximate result of Lean Focus's conduct, Lean Focus also has been unjustly enriched in the form of consulting fees and related compensation received through the exploitation of Danaher's trade secret and confidential information.  Danaher is entitled to damages for its actual loss and to disgorgement of Lean Focus's unjust enrichment.

125.    Although Danaher is entitled to damages to compensate it for the harm it has already suffered, for the reasons set forth above, they will not provide an adequate remedy at law for any ongoing future breach of Baker's fiduciary duty.  Danaher is threatened with additional

and ongoing injuries, including further loss of market advantage and of the inherent value of its trade secrets and confidential information, unless Lean Focus is enjoined and restrained by an order of this Court.  Danaher is entitled to an order requiring Lean Focus to purge Danaher's trade secrets and confidential information, enjoining Lean Focus from any further use or disclosure of that information, and prohibiting Lean Focus from aiding and abetting any further breach of fiduciary duty by Baker.

## COUNT VII
## WISCONSIN COMPUTER CRIMES ACT
Wis. Stat. Ann. § 943.70
*Against Defendant Lean Focus*

126.    Danaher hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

127.    With Baker's assistance, Lean Focus willfully, knowingly, and without authorization has taken possession of Danaher's data, as well as copied that data, and used and disclosed Danaher's restricted access information in the form of information about DBS, to unauthorized persons, including other companies and actual and potential Danaher competitors that otherwise would not otherwise have had access to this restricted DBS information, all in violation of Wis. Stat. Ann. § 943.70(2)(a)(4)–(6).

128.    Lean Focus's violation of this statute has deprived Danaher of the value of its trade secrets and other proprietary, confidential, restricted-access information by causing, among other damages, a loss of profits, a loss in market advantage through the use and dissemination of that information, and a decline in the market value of its products.

129.    As a result, Danaher is entitled to injunctive relief under Wis. Stat. Ann. § 943.70(5).

## COUNT VIII
## CIVIL THEFT
### Wis. Stat. Ann. §§ 895.446 & 943.20
*Against Defendants Lean Focus and Baker*

130.     Danaher hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

131.     Lean Focus and Baker intentionally used, transferred, and retained possession of movable property owned by Danaher.  The property has economic value because Danaher uses its trade secrets and confidential information to maintain its position as a leading scientific and technology innovator.

132.     Defendants Baker and Lean Focus knowingly obtained, retained, and exercised control over Danaher's property by acquiring and using Danaher's trade secrets and confidential information for the development and operation of Lean Focus's business.

133.     Danaher did not consent to or authorize Baker to take and carry away Danaher's property.

134.     Baker knew that Danaher did not consent to Baker taking and carrying away Danaher's property because, during his employment at Danaher, Baker signed agreements with Danaher agreeing to return such property upon his termination from Danaher.

135.     Lean Focus, which was founded by Baker, knew that Danaher did not consent to Baker taking and carrying away Danaher's property.  Baker is a key agent of Lean Focus as its founder, President, and CEO.

136.     Defendants acted with the specific intent of permanently depriving Danaher of the benefit and value of its property.  Defendants knowingly used Danaher's property in such a manner as to permanently deprive Danaher of its use and benefit.  Defendants stole Danaher's trade secrets and confidential secret information in order to gain an unfair commercial advantage

as Lean Focus entered the market, according to its website, as a company offering "Danaher Business System and Lean Consulting."

137.    Lean Focus's unfair competition has deprived Danaher of the value of its trade secrets and confidential information by causing, among other damages, a loss of profits, a loss in market advantage through the use and dissemination of that information, and a decline in the market value of its products.

138.    Baker and Lean Focus intended to deprive Danaher permanently of the possession of the property.  Baker and Lean Focus are not good faith holders or purchasers of Danaher's property.

139.    Pursuant to Wis. Stat. Ann. §§ 895.446(3), Danaher is entitled to actual damages, investigation and litigation costs, and exemplary damages.

**COUNT IX**
**MISAPPROPRIATION OF TRADE SECRETS**
Wisconsin Uniform Trade Secrets Act, Wis. Stat. Ann. § 134.90
*Against Defendants Lean Focus and Baker*

140.    Danaher hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

141.    Danaher's proprietary business model, DBS, including its design, tools, processes, and implementation, constitutes trade secrets.  In particular, DBS includes information, including patterns, compilations, programs, methods, techniques, and processes, that derives independent economic value from not being generally known to, or not being readily ascertainable by proper means by, other unauthorized persons who can obtain economic value from its disclosure or use. The information described in the preceding paragraphs, along with other confidential information, constitutes trade secrets under the meaning of Wisconsin Uniform Trade Secrets Act, Wis. Stat. Ann. § 134.90(1)(c).

142.    Danaher derives independent economic value from that information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure and use.

143.    Danaher undertakes reasonable efforts to maintain the secrecy of DBS, including through the use of handbooks, policies, physical electronic security measures, electronic security measures, and binding agreements.

144.    During his employment with Danaher, Baker had access to and knowledge of Danaher's trade secrets, as set forth in the preceding paragraphs.

145.    Upon leaving Danaher, Baker took with him materials containing confidential information about DBS, thus acquiring Danaher's trade secrets in a manner in which he knew or had reason to know, after his years at Danaher, constituted improper means.  Additionally, Baker took with him intimate knowledge of DBS that he knew or had reason to know, after his years at Danaher, he could not disclose to anyone outside of Danaher or use to compete against Danaher without Danaher's consent.

146.    Baker and Lean Focus have since used these trade secrets to operate and generate business for Lean Focus, without Danaher's consent.

147.    Baker and Lean Focus's use has been willful, malicious, and deliberate.  Baker was aware from signing the Proprietary Interest Agreement and Nondisclosure Agreement that he was not to take or use any information related to Danaher's trade secret DBS.  Lean Focus, which was founded by and continues to be run by Baker, also has been willful, malicious, and deliberate in its use of DBS for the same reasons.

148.    During all instances in which Lean Focus and Baker have disclosed and used Danaher's confidential and trade secret DBS, Lean Focus and Baker knew or had reason to know

that they had acquired DBS through the improper means of Baker improperly taking materials and knowledge concerning DBS with him, that Baker had a duty to maintain its secrecy and limit its use given agreements he had signed at Danaher agreeing to do so, and that Lean Focus and Baker had derived DBS from Baker who owed a duty to maintain its secrecy and limit its use.

149.    Pursuant to Wis. Stat. Ann. §§ 134.90(4)(a)–(c), Danaher is entitled to damages, punitive damages, and attorneys' fees.

150.    Pursuant to Wis. Stat. Ann. § 132.90(3), Danaher is additionally entitled to injunctive relief.

**COUNT X**
**MISAPPROPRIATION OF TRADE SECRETS**
**UNDER THE DEFEND TRADE SECRETS ACT ("DTSA")**
18 U.S.C. §§ 1836 *et seq.*
*Against Defendants Lean Focus and Baker*

151.    Danaher hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

152.    Danaher's proprietary business model, DBS, including its design, tools, processes, and implementation, constitutes trade secrets as defined under the DTSA.  In particular, DBS is a business plan that involves various compilations, methods, techniques, processes, procedures, and programs that derive independent economic value from not being generally known to other unauthorized persons.  Danaher has taken reasonable measures to keep DBS secret.  The information described in the preceding paragraphs, along with other confidential information, constitute trade secrets under the meaning of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.* ("DTSA").

153.    Danaher's trade secrets are used in interstate commerce as part of Danaher's business model, with a nationwide and international scope.

154.     The fact that Baker possessed trade secret information relating to Danaher's proprietary business model and now has founded and works for Lean Focus, which claims to have developed the same or similar model and, on information and belief, sells that Danaher-derived model to actual and potential Danaher competitors through consulting contracts, amounts to a misappropriation of trade secrets.

155.     Lean Focus and Baker knew or had reason to know that the trade secret DBS was acquired by the improper means of Baker taking materials and knowledge of DBS with him after he left Danaher.

156.     As the founder, President, and CEO of Lean Focus, Baker is a key agent of Lean Focus.  On information and belief, as Lean Focus's President and CEO, Baker controls Lean Focus's decision-making and operations.  Lean Focus has used and benefited from Danaher's trade secrets through Baker's use and disclosure of the trade secrets to design and implement Lean Focus's business strategy.  Baker's knowledge and use of Danaher's trade secrets are equally attributable to Lean Focus.

157.     In addition, Lean Focus and Baker repeatedly have disclosed and used the DBS trade secret without any express or implied consent from Danaher.

158.     Lean Focus and Baker knew and continue to know throughout their repeated disclosure and use that the knowledge of the trade secret was acquired under circumstances giving rise to Baker's duty to maintain the secrecy of the trade secret or limit the use of the trade secret, and was derived from or through Baker, who owed contractual and fiduciary duties to Danaher to maintain the secrecy of the trade secret or limit the use of the trade secret.

159.     At no time has Danaher consented to Baker or Lean Focus's acquisition, disclosure, or use of the trade secrets for any reason unrelated to Baker's employment with Danaher.

160.     Danaher has been and is being irreparably harmed by Lean Focus and Baker's misappropriation of its trade secrets.  Indeed, Baker signed an Agreement stating as much.  *See* Proprietary Interest Agreement, ¶ 9.

161.     Without injunctive relief, Danaher will continue to be irreparably harmed by Lean Focus and Baker's misappropriation of its trade secrets.

162.     Lean Focus and Baker's misappropriation of Danaher's trade secrets was made in bad faith, and it was willful and malicious.  Baker was aware of the agreements he signed with Danaher and has made an intentional, concerted effort to market Lean Focus using Danaher's name and trade secret.

163.     As a direct and proximate result of Baker and Lean Focus's wrongdoing, Danaher has suffered, and will continue to suffer, irreparable injury and significant damage.

164.     Danaher is threatened with additional and ongoing injuries, including losing its market position through the use and dissemination of its trade secrets and losing the inherent value of its trade secrets, unless Baker and Lean Focus are enjoined and restrained by an order of this Court.

165.     Pursuant to 18 U.S.C. § 1836(b)(3)(A), Danaher is entitled to injunctive relief to prevent future misappropriation and use of its trade secrets.

166.     Pursuant to 18 U.S.C. § 1836(b)(3)(B), Danaher is entitled to damages for actual losses and to disgorgement for all unjust enrichment caused by the misappropriation of its trade secrets.

167.    Pursuant to 18 U.S.C. §§ 1836(b)(3)(C)–(D), Danaher is entitled to recover its attorneys' fees and exemplary damages totaling twice the award made under § 1836(b)(3)(B) for Baker and Lean Focus's willful and malicious misappropriation.

## PRAYER FOR RELIEF

**WHEREFORE**, Danaher respectfully requests that this Court grant the following relief:

(i)     Enter judgment in favor of Danaher on all counts of this Complaint;

(ii)    Permanently enjoin Lean Focus from using the Danaher Business Solutions model;

(iii)   Permanently enjoin Lean Focus from selling Danaher Business System expertise to customers;

(iv)    Permanently enjoin Lean Focus and Baker from soliciting Danaher and Danaher operating company employees;

(v)     Permanently enjoin Lean Focus and Damon Baker from any use or disclosure of Danaher's confidential information about DBS and/or trade secrets, and order each Defendant, including all of Lean Focus's agents, employees, officers, and consultants, to:

(a) return to Danaher any and all confidential documents and information that it received, obtained, took, or transferred from Danaher (electronically or otherwise);

(b) provide a sworn written certification, under penalty of perjury, that states that both Lean Focus and Baker have returned all copies and versions of any documents containing Danaher confidential information in their possession, custody, or control;

(c) produce to Danaher for inspection any electronic devices, including personal computers, laptops, desktops, iPads or similar tablet devices, smartphones and other hand-held devices that are, or have been, in the possession, custody, or control of Lean Focus or Damon

Baker at any time from September 12, 2016 to the date of this Order, for Danaher to forensically review the devices and identify all Danaher files that will then be promptly removed from the devices; and

(d) inform all Lean Focus customers, partners, consultants, employees, collaborators, and all persons and entities working in concert with Lean Focus that Lean Focus must return to Danaher all information and materials regarding DBS;

(vi)    For a period of two years, or such other time as the Court deems appropriate, put in place a monitor (funded entirely by Defendants) to ensure that Lean Focus and Baker are no longer in possession of, using, or disclosing Danaher's confidential or trade secret information or materials, and to provide regular reports of the Monitor's work to the Court and Danaher;

(vii)   Award Danaher money damages, including compensatory damages, exemplary damage, and punitive damages pursuant to 18 U.S.C. § 1836(b)(3)(B), Wisc. Stat. Ann. §§ 134.90(4)(a)–(b), Wis. Stat. Ann. §§ 895.446(3)(a)–(c), or as otherwise permitted by law, in an amount to be proven at trial;

(viii)  Award Danaher its costs, expenses, and reasonable attorneys' fees incurred in this action, as provided for in Baker's signed Proprietary Interest Agreement ¶ 9, under 18 U.S.C. § 1836(b)(3)(D), Wisc. Stat. Ann. §134.90(4)(c), Wis. Stat. Ann. §§ 895.446(3)(a)–(c), or as otherwise provided by law;

(ix)    Award a reasonable royalty to Danaher for the profits Lean Focus has made off of the use of Danaher's name, trade secrets, and confidential information, pursuant to 18 U.S.C. §1836(b)(3)(B), Wisc. Stat. Ann. §134.90(4)(a), or as otherwise provided by law, in an amount to be proven at or after trial;

(x)     Order Baker and Lean Focus to disgorge any and all profits or gains earned from the use or disclosure of Danaher's trade secrets or confidential information;

(xi)     Award Danaher pre-judgment interest, post-judgment interest, and costs of Court, to the extent permitted by law; and

(xii)     Award such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Danaher requests a jury trial of all issues properly triable by jury.

Dated: September 11, 2019                    Respectfully submitted,


                                     /s/  C. Bryan Wilson
                                     Dane H. Butswinkas*
                                     dbutwinkas@wc.com
                                     David S. Blatt*
                                     dblatt@wc.com
                                     C. Bryan Wilson
                                     bwilson@wc.com
                                     Katherine A. Petti
                                     kpetti@wc.com

                                     *applications pending or forthcoming

                                     WILLIAMS & CONNOLLY LLP
                                     725 Twelfth Street, NW
                                     Washington, DC 20005
                                     (202) 434-5000
                                     (202) 434-5029 (fax)

                                     Brady C. Williamson
                                     bwilliam@gklaw.com
                                     GODFREY & KAHN S.C.
                                     One East Main Street
                                     Suite 500
                                     Madison, WI 53703-3300
                                     (608) 257-3911
                                     (608) 257-0609 (fax)

                                     *Attorneys for Plaintiff Danaher Corporation*