**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| DANAHER CORPORATION,<br><br>Plaintiff,<br>v.<br><br>LEAN FOCUS, LLC, and<br>DAMON BAKER,<br><br>Defendants. | Civil Action No. 3:19-cv-00750 |

**PLAINTIFF DANAHER CORPORATION'S OPPOSITION**
**TO DEFENDANTS' MOTION TO STAY DISCOVERY**

After he left Plaintiff Danaher Corporation and before suit was filed, Defendant Damon Baker secretly destroyed thousands of files that he stole from Danaher. Danaher filed a ten-count Complaint against Baker and his company, Defendant Lean Focus LLC ("Lean Focus"), which Defendants answered and then moved partially to dismiss, acknowledging that five of the ten counts, including for civil theft, conversion, and violation of the Wisconsin Computer Crimes Act, were well-pleaded and would proceed to discovery. After the parties' Rule 26(f) conference, Danaher served discovery, which Defendants followed by serving their own discovery requests. When Danaher notified Defendants that it would serve six individuals with Rule 45 subpoenas seeking relevant evidence, Defendants discouraged the recipients from promptly complying and offered to pay for an attorney to respond, reducing to zero the supposed costs on those non-parties. Left with few options to avoid disclosing relevant matter, Defendants now ask the Court to stay discovery until their partial motion to dismiss is resolved. Defendants cite no case from any jurisdiction in which a court has done so. And, here, Danaher will be significantly prejudiced by a stay, as Defendants already have deleted computer files and seek to block third parties from producing documents. Danaher respects the Court's temporary stay,

entered shortly after Defendants filed their motion, Dkt. 26, but respectfully submits that this case does not present a typical posture, either legally or factually, and that the requested stay should be denied.

## BACKGROUND

### I. Baker Stole and Destroyed 52,686 Files After Leaving Danaher.

Baker worked at Danaher for almost a decade and became a high-level executive within the company, including a Master Trainer and Senior Director of the "Danaher Business System" or "DBS." Compl. ¶¶ 27–28. DBS is a key, proprietary business model within Danaher and its operating companies and an engine of their collective success. *Id.* ¶¶ 18–20. At some point during his tenure at Danaher, Baker surreptitiously started a new company, Lean Focus. ¶ 49. Years later, Baker abruptly left Danaher and took with him confidential DBS information and trade secrets, absconding with this material to Lean Focus to avoid the costs of creating, developing, and implementing his own business model. *Id.* ¶¶ 39–47. At Lean Focus, Baker has advertised his use of confidential Danaher information to peddle an imitation version of DBS for commercial profit. *Id.* ¶¶ 50–54, 64–74.

When Baker left Danaher, Danaher reminded him of his contractual obligations and asked him to certify that he had returned all Danaher materials. Ex. 1 (Letter from Sekowski to Baker (Sept. 13, 2016)). Baker did not respond. Danaher followed up, pointing to Baker's publication of confidential Danaher information and re-sending the requested certification. Ex. 2 (Letter from Perrelli to Baker (Sept. 23, 2016)). A week later, Baker certified that he had returned all Danaher materials. Ex. 3 (Letter from Raske to Perrelli (Sept. 30, 2016)). A preliminary investigation of devices Baker returned, however, raised serious questions concerning the apparent destruction of data on his Danaher devices, misuse of devices, and use of external storage media. On October 7, 2016, Danaher asked Baker to "preserve any and all

Danaher property and confidential data that exists on [his] home computer, personal email, etc." Ex. 4 (Letter from Perrelli to Baker (Oct. 7, 2016)). Two weeks later, Baker's new employer, Eaton Corporation, informed Danaher that, notwithstanding Baker's certification, Baker possessed additional devices containing Danaher information, including a USB device identified as "2GE64EYT" (the "Seagate Device") that Eaton then returned to Danaher. Ex. 5 (Letter from Raske to Perrelli (Oct. 25, 2016)).

Forensic examination of the belatedly returned Seagate Device showed that it had been wiped clean of 52,686 files on October 12, 2016, days after Danaher had requested Baker to preserve all Danaher materials. Ex. 6 (Letter from Perrelli to Raske (Dec. 27, 2016)); *accord* Decl. of James D. Vaughn, ¶¶ 17, 21. Danaher informed Eaton of this fact, together with other troubling findings from the devices Baker had returned. Ex. 6. Eaton conducted an internal investigation and informed Danaher on February 2, 2017 that (1) the destroyed files had been "modified and/or deleted by Mr. Baker on October 12, 2016," (2) Baker "acknowledged that the deleted information contained Danaher material," and (3) Eaton had terminated Baker's employment because of his misconduct. Ex. 7 (Letter from Raske to Perrelli (Feb. 2, 2017)). Baker surfaced as Lean Focus's CEO and President shortly thereafter. *See* Answer (Dkt. 16), ¶ 49.

## II. Defendants' Efforts To Prevent Discovery In This Case

Danaher filed a ten-count Complaint against Defendants in September 2019. In response, Defendants did not seek to dismiss the case; rather, they moved to dismiss only certain claims. *See* Dkt. 17. Thus, no matter how the Court rules on Defendants' partial motion to dismiss, discovery will proceed. Consistent with the Rules, following the parties' October 23, 2019 Rule 26(f) preliminary conference, Danaher served requests for production and interrogatories on Defendants. Five days later, on October 28, Danaher notified Defendants that it intended to

serve Rule 45 subpoenas on six former Danaher employees affiliated with Lean Focus as well as Eaton. Mot. Ex. B. Two days later, on October 30, Defendants served discovery largely aimed at the trade secret allegations that they had moved to dismiss. Ex. 8 (Lean Focus, LLC's & Damon Baker's 1st Reqs. for Produc. of Docs. & Things from Danaher Corp.); Ex. 9 (Lean Focus, LLC's & Damon Baker's 1st Set of Interrogs. to Danaher Corp.).

Defendants immediately attempted to undermine Danaher's Rule 45 subpoenas. On October 29, the day after receiving notice of them, Baker personally called one or more subpoena recipients to tell them not to respond and, instead, to "sit on" the subpoena. Decl. of Carrie Haas-Vukosovich, ¶ 7. Baker was so concerned about discovery that he reached witnesses before Danaher had even served the subpoenas. Baker assured the individual subpoena recipients that Lean Focus would retain and pay for their counsel. *Id.* To ensure that recipients "sit on" the subpoenas rather than produce responsive materials, Baker convened a conference call to which he invited the individual subpoena recipients and defense counsel (John Sanders and his colleague at Winston & Strawn LLP, Rachel Koehn, who has not yet appeared in the case). *Id.* ¶¶ 7–8.

On a conference call held on October 31, attended by five of the six individual subpoena recipients, Baker again stated that Lean Focus would pay for counsel to prepare subpoena responses. *Id.* ¶ 10. Defense counsel told the individuals that they need not respond to the subpoenas and repeated that Lean Focus would provide them with counsel. *Id.* Defense counsel told the subpoena recipients that, notwithstanding the late November 2019 deadline to produce responsive documents, the subpoenas were not court orders and compliance was unnecessary. *Id.* Thus, defense counsel encouraged these non-client, Rule 45 subpoena recipients not to comply with their subpoenas and repeated Lean Focus's offer to pay for counsel for that purpose.

*See* Decl. of Carrie Haas-Vukosovich, ¶¶ 10–11; *cf.* Wis. S. Ct. R. 20:3.4 (an attorney "shall not . . . unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value," "counsel or assist another person to do any such act," or "request a person other than a client to refrain from voluntarily giving relevant information to another party unless (1) the person is a relative or an employee or other agent of a client; and (2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information").

Following the October 31 conference call among defense counsel, Baker, and five subpoena recipients, Lean Focus terminated email access for one subpoena recipient. That witness, therefore, could not produce any of her responsive emails. Decl. of Carrie Haas-Vukosovich, ¶¶ 12–13. On November 5, Baker followed up in writing with each individual subpoena recipient to reiterate that Lean Focus would pay for counsel from DeWitt LLP to respond to the subpoenas. *Id.* ¶ 15. The following day, November 6, Defendants filed their motion to stay. Dkt. 24 ("Mot."). In that motion, Defendants represented that the subpoenas will cause those same individual subpoena recipients to incur "significant cost," Mot. 2, impose "significant expense," *id.* at 6, and require them to "spend significant time" compiling responsive documents, *id.* Defendants made these assertions even though they and their counsel repeatedly had told the individual subpoena recipients that Lean Focus would provide and pay for counsel.

Despite Defendants' best efforts, one subpoena recipient complied with her subpoena (before the Court temporarily stayed discovery). Decl. of Carrie Haas-Vukosovich, ¶ 14. This witness attested that "[c]omplying with the subpoena took me no more than a couple hours, was not burdensome, and cost me nothing." *Id.* The witness produced documents to a vendor, which is processing them but has not yet made them available for review to Danaher counsel. The

vendor-collected documents will be made available to defense counsel after the temporary stay is lifted and an appropriate protective order entered. *See* Ex. 10 (Letter from Wilson to Sanders (Nov. 13, 2019)).

## ARGUMENT

Discovery presumptively begins immediately after the preliminary discovery conference. Fed. R. Civ. P. 26(d)(1); Standing Order Governing Prelim. Pretrial Confs., ¶ 1 (discovery cannot begin "prior to" conference); *Worrell v. Houston Can! Acad.*, 424 F. App'x 330, 337 (5th Cir. 2011) ("Rule 26(d) . . . expressly sets the starting point for discovery at the Rule 26(f) conference"). Although a court has discretion to stay discovery, "this authority must be exercised so as to secure the just, speedy and inexpensive determination of every action." *N. Eng. Carpenters Health & Welfare Fund v. Abbott Labs.*, 2013 WL 690613, at *1–2 (N.D. Ill. Feb. 20, 2013) (denying stay pending motion to dismiss).[1] "The proponent of a stay bears the burden of establishing its need." *United States v. Depies*, 2017 WL 1906964, at *1–2 (W.D. Wis. May 8, 2017) (denying stay because it would not "simplify the issues") (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)). Because "motions to dismiss are a frequent part of federal practice," "[o]ne argument that is usually deemed insufficient to support a stay of discovery is that a party . . . has . . . filed[] a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *New Eng. Carpenters*, 2013 WL 690613, at *1–2 (quoting *Solomon Realty Co. v. Tim Donut U.S. Ltd.*, 2009 WL 2485992, at *2 (S.D. Ohio 2009)). Denying a stay is appropriate so "actions [can be] resolved within one year of the date they are filed." *Gary v. Badger Process*

[1] All internal quotation marks omitted unless otherwise noted.

*Servs., Inc.*, 2017 WL 6541448, at *1 (E.D. Wis. Oct. 16, 2017) (denying stay pending motion to dismiss).[2]

**I. Defendants' Partial Motion To Dismiss Does Not Warrant Staying Discovery.**

**A. Defendants' Partial Motion Does Not Support A Stay.**

Defendants fail to cite a single case that stayed discovery where, as here, Defendants move to dismiss only some claims. *See* Dkt. 17. That is not surprising, as Wisconsin federal courts routinely refuse to stay discovery if the issues unaffected by the pending motion still need to be litigated in court. *See, e.g.*, *Milwaukee Elec. Tool Corp. v. Hitachi Koki Co.*, 2012 WL 12929877, at *1 (E.D. Wis. Apr. 17, 2012) (denying stay where three of seven patents at issue would still need to be litigated pending Patent and Trademark Office proceeding); *Le v. Kohl's Corp.*, 2016 WL 9225265, at *2 (E.D. Wis. Mar. 1, 2016) (denying stay pending class settlement in different court where Wisconsin-plaintiff's claims were broader than those settled by class); *Gary*, 2017 WL 6541448, at *1 (denying stay pending motion to dismiss). Here, "Lean Focus and Baker do not challenge . . . in their motion to dismiss" counts IV, VII, or VIII or parts of counts I and II. Mot. 9. That fact alone, mentioned near the end of Defendants' motion, warrants denying the motion.

Unable to cite any supporting law, Defendants instead claim their partial motion raises "threshold issues" that "would either completely obviate the need for any discovery on most of Danaher's claims or, at the very least, dramatically limit the scope of discovery in this case." Mot. 4. That argument, however, does not alter the above law or facts concerning partial

---

[2] Neither of the two cases Defendants cite to explain a court's exercise of discretion involved a motion to stay. *See Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013) (discussing subpoenas); *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (finding no constitutional constraints to discovery in defamation case).

motions to dismiss. Moreover, even when a defendant moves to dismiss an entire case, to prevent unnecessary delay from routine motions to dismiss, courts generally stay proceedings "only when a party raises a potentially dispositive threshold issue such [as] standing, jurisdiction, or qualified immunity." *Red Barn Motors, Inc. v. Cox Enters., Inc.*, 2016 WL 1731328, at *2–3 (S.D. Ind. May 2, 2016). Wisconsin federal courts regularly apply this principle. *See, e.g.*, *Gary*, 2017 WL 6541448, at *1 ("nothing in the Federal Rules suggest that cases are to be halted any time a potentially dispositive motion is filed, especially when the motion does not touch upon alleged jurisdictional defects"); *Omegbu v. Wis. Elections Bd.*, 2006 WL 581210, at *1 (E.D. Wis. Feb. 6, 2006) (granting stay only when motion to dismiss "questions the Court's jurisdiction and raises immunity issues"); *see also New Eng. Carpenters*, 2013 WL 690613 at *1 (discovery stay warranted when motion to dismiss raises "standing" or "immunity" claims). Defendants' partial motion raises no such threshold, case-dispositive issue of the kind that might warrant a stay.

Defendants' cited authorities, Mot. 3–8, only underscore the lack of support for their request. Their lead citation, *Henson v. Department of Health & Human Services*, 892 F.3d 868 (7th Cir. 2018), involved a FOIA dispute where the withholding agency produced "more than 7,000 pages in response" to the FOIA request, the agency requested a stay so it could "reprocess" the FOIA request "by conducting a new search for responsive documents" that it then would produce "on a rolling basis," and the court held it was "prudent to entertain summary-judgment motions before discovery." *Id.* at 872–74. In *Holton v. Wisconsin*, 2008 WL 191258, at *1 (E.D. Wis. Jan. 22, 2008), the court issued a stay after the defendant moved to dismiss the "entire action" for failing to exhaust administrative remedies, "a condition precedent to suit." The threshold motion in *Thompson v. Retirement Plan for Employees of S.C. Johnson & Sons, Inc.*,

2008 WL 4964714, at *10 (E.D. Wis. Nov. 14, 2008), similarly "would have resulted in dismissal" of the complaint "in its entirety." And, in *Estate of Enoch v. Tienor*, 2008 WL 410656, at *1 (E.D. Wis. Feb. 11, 2008), the court stayed discovery against high-ranking government officials in a case asserting constitutional claims arising from a prisoner's suicide at a correctional facility and denied a request to stay discovery against the remaining defendants. This case resembles none of those cases. Instead, it falls within the mainstream of cases in which courts reject stay requests because a pending motion could only partially resolve the case.[3]

**B. Defendants Misrepresent The Costs Of Subpoena Compliance.**

Defendants next urge the Court to stay discovery to prevent non-parties from "incur[ring] significant expense and spend[ing] significant time" responding to Danaher's subpoenas. Mot. 5. This argument is disingenuous at best, as Defendants failed to disclose that the individual subpoena recipients will incur *no* costs because Lean Focus has offered to pay for counsel for all six of them. Decl. of Carrie Haas-Vukosovich, ¶¶ 10, 15. Defendants' repeated assertions that a stay is warranted because of purported non-party costs omits mention of this fact.

Nor does the purported, unsubstantiated burden of producing responsive documents invoked by Defendants, *see* Mot. 5–6, justify a stay. One of the six individual subpoena recipients already has completed her production of responsive documents, and it took her only "a couple hours." Decl. of Carrie Haas-Vukosovich, ¶ 14. That fact contrasts sharply with Defendants' speculative burden claims, and hardly constitutes an undue burden.

[3] *See, e.g.*, *Robert W. Thomas & Anne McDonald Thomas Revocable Tr. v. First W. Tr. Bank*, 2012 WL 3400532, at *4 (D. Colo. Aug. 14, 2012) (denying stay pending partial motion to dismiss and partial judgment on the pleadings because stay would not simplify proceedings); *Milwaukee Elec.*, 2012 WL 12929877, at *2 (denying stay that would not simplify proceedings); *Kohl's*, 2016 WL 9225265, at *2 (denying stay in which plaintiff's claims were broader than those covered by class settlement in a different lawsuit).

As for Defendants, they will incur discovery costs regardless of their partial motion, because even were it granted in full (it should not be granted at all), half the case still would remain. Moreover, if the mere existence of some costs warranted staying discovery, stays would be routine and not the exception that they are. As one Wisconsin federal court observed, a stay is improper when "Defendants claim no special hardship in complying with what appear to be Plaintiff's routine discovery requests." *Gary*, 2017 WL 6541448, at *1. That is the case here, as Defendants nowhere assert that Danaher seeks irrelevant matter and identify no special burdens imposed by Danaher's routine discovery requests.[4]

### C. Danaher's Requests Largely Relate To Claims Defendants Did Not Move To Dismiss.

Defendants did not move to dismiss Danaher's claims for conversion, civil theft, and violation of the Wisconsin Computer Crimes Act, and they moved to dismiss Danaher's breach-of-contract claims only in part. *See* Mot. 9. There is no basis for staying discovery relating to these unchallenged claims, and Defendants cite no contrary authority. Moreover, Defendants did not even undertake to identify the discovery related to the claims they did not move to dismiss, speculating instead that their partial motion "likely" will affect the scope of discovery. Mot. 6. Many of Danaher's requests, however, concern claims that are not the subject of Defendants' partial motion.

[4] Defendants claim the discovery seeks "sensitive" or "confidential" information, Mot. 2, 5, 6, but a protective order easily addresses that concern. *See, e.g.*, *Kreilkamp v. Roundy's, Inc.*, 2006 WL 5866670, at *1 (W.D. Wis. Jan. 9, 2006) (providing for protective order before confidential discovery) (cited approvingly by Defendants). Here, the parties have agreed that a protective order is necessary and appropriate, Dkt. 27, § III.c (Prelim. Conf. Rpt.), Danaher circulated a proposed order to cover both parties and non-parties, but Defendants have yet to comment.

For example, Defendants nowhere dispute that the following requests seek documents and information relevant to the conversion, civil theft, and Wisconsin Computer Crimes Act claims that Defendants do not seek to dismiss:

- Documents relating to the creation of Lean Focus's website (Doc. Req. No. 2), which mirrors and incorporates content that Baker stole when leaving Danaher, Compl. ¶ 136;

- Documents and information relating to Baker's employment by and departure from Eaton (Doc. Req. No. 3; Interrog. 3), which is where Baker admitted that he stole Danaher information and destroyed that information after being asked to return it, *see* Ex. 7;

- Documents relating to Lean Focus's business model (Doc. Req. No. 4) and the "Lean Focus Business System" (Doc. Req. No. 5), which was created with proprietary information Baker stole from Danaher, Compl. ¶¶ 79, 136;

- Communications with Danaher affiliates and competitors (Doc. Req. No. 7), identities of which may have been derived from information Baker stole, Compl. ¶¶ 46, 137;

- Danaher documents—*i.e.*, the materials Baker stole and converted (Doc. Req. No. 8), any permission requested from Danaher to disclose them (Interrog. 4), and documents related to Danaher, DBS, and Danaher-affiliated people and entities (Doc. Req. No. 9), which also stem from information Baker stole and converted;

- Documents relating to Lean Focus's finances, including profits and gains (Doc. Req. Nos. 10–12), which are relevant to damages and disgorgement, *see, e.g.*, Wis. Stat. Ann. § 895.446(3) (damages recoverable for civil theft); *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 79 (Wis. 1996) ("Conversion damages are intended to compensate a wronged party for the loss sustained because his or her property was wrongfully taken.");

- Documents sufficient to identify potential witnesses with information about Danaher's claims (Doc. Req. No. 13); and

- Devices associated with Baker's theft and conversion (Doc. Req. No. 14), including his destruction of files he stole, *see* Ex. 7 (files were "modified and/or deleted by Mr. Baker. . . . Baker has since acknowledged that the deleted information contained Danaher material"); Decl. of James D. Vaughn, ¶ 20 (explaining why physical inspection of Baker's computer is necessary).[5]

---

[5] The subpoenas issued to the individuals and Eaton are no different. Dkt. 24-1 at 40.

Defendants' broad-brush stay motion nowhere discusses Danaher's discovery or how it relates to the various claims asserted. Ironically, were the Court to stay discovery relating to the specific claims Defendants moved to dismiss, it would stay the bulk of the discovery *Defendants* posed, which largely focuses on the trade secrets claims they moved to dismiss.[6]

The effort associated with parsing discovery requests when a defendant moves to dismiss less than all claims is another reason courts disfavor stays in the circumstances presented. As one court explained, discovery should not be stayed if the "litigation does not differ substantially from other civil litigation" and "the dispositive motions are not fully dispositive of the matter":

> The Court is not inclined to prejudge the merits of the pending dispositive motions . . . [T]he pending dispositive motions only affect the case in part, and Plaintiff's argument that the requested discovery is also relevant to the other claims . . . remaining at issue is persuasive. . . . Entry of a stay may cause significant delay of the resolution of this matter, which in turn makes the Court's docket less predictable and less manageable. . . . [A] partial stay of discovery during the pendency of dispositive motions that, if granted, would only partially resolve the matter would likely result in a disjointed and duplicative discovery process.

*McDonald Thomas Revocable Tr.*, 2012 WL 3400532, at *4; *see also, e.g.*, *Milwaukee Elec.*, 2012 WL 12929877, at *2. That undisputedly is the case here.

Finally, even if Defendants succeed on any aspect of their partial motion (they should not), a stay would cause unnecessary delay for another reason: Danaher would be allowed to file an amended complaint to cure any deficiency. *See, e.g.*, *Barry Aviation Inc. v. Land O'Lakes*

---

[6] *See* Ex. 8, Req. Nos. 1 (documents "constituting the trade secrets"), 2 (documents containing confidential information), 3 (protective measures for "trade secrets"), 4–5 (public disclosure of trade secrets), 8 (development of trade secrets), 9 (training surrounding trade secrets and confidentiality measures), 10 (same for terminated employees); Ex. 9, Interrogs. 6 (identify trade secret), 7 (identify documents constituting the trade secret), 8 (identify individuals with access to trade secrets), 9 (identify protective measures for trade secrets), 10 (identify employees and contractors to whom trade secrets were disclosed), 11 (identify disclosed documents containing trade secrets).

*Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (abuse of discretion to deny leave to amend following first motion to dismiss). Courts deny stays in such circumstances, as "even assuming that Defendants are correct about the insufficiency" of a complaint, a plaintiff "may have the opportunity to amend and the case will continue. As a result . . . staying discovery would only build in unnecessary delay." *Red Barn*, 2016 WL 1731328, at *2–3.

## II. Defendants' Improper Conduct Counsels Against A Stay.

Defendants assert that Danaher will not be prejudiced by a stay. Mot. 8. Defendants ignore their own conduct, as their intentional destruction of files, attempt to thwart discovery, and attempt to conceal their conduct prejudices Danaher and counsels against a stay.

Independent sources have confirmed that, when asked to return electronic devices to Danaher, Baker intentionally destroyed thousands of files that he improperly took from Danaher and prevaricated about his conduct. When he left Danaher in 2016, Baker mass-saved 52,686 Danaher files onto an external hard drive, absconded with those files, and destroyed them after he was asked to preserve them. *See* Ex. 6. These facts have been confirmed by independent forensic analysis. Decl. of James D. Vaughn, ¶¶ 17, 21. A second, independent third-party—Baker's subsequent employer, Eaton Corporation—corroborated these facts, including that "files" from an "external hard drive" were "modified and/or deleted by Mr. Baker on October 12, 2016" and that, after initially denying any destruction, Baker "acknowledged that the deleted information contained Danaher material." Ex. 7. Eaton "terminated [Baker's] employment" after discovering this misconduct. *Id*. Baker attempted to further cover-up his misconduct by wiping his Danaher-issued phone and returning to Danaher devices infected with ransomware, which made them difficult to analyze. Ex. 4. Defendants have continued their efforts in this case by instructing Rule 45 subpoena recipients—before individuals even had received

subpoenas and Defendants had sought a stay—to "sit on" their subpoenas and not produce documents, and offering recipients free counsel to effectuate that outcome. Decl. of Carrie Haas-Vukosovich, ¶¶ 7, 10–11. That effort, too, would have remained concealed but for an independent, non-party's voluntary disclosure of this information. Baker's admitted, intentional deletion of stolen Danaher files and prevarications, including as confirmed by multiple, independent sources, and Defendants' repeated efforts to interfere with discovery counsel against a stay.

Defendants finally argue that a purported delay in filing suit eliminates any prejudice. But Danaher filed its claims within the limitations period; Defendants nowhere claim otherwise. Defendants point to no case supporting the novel concept that discovery for timely claims should be delayed based on when during the limitations period the claim is filed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to stay discovery should be denied.

Date: November 13, 2019

Respectfully submitted,

/s/ C. Bryan Wilson

Dane H. Butswinkas
dbutswinkas@wc.com
David S. Blatt
dblatt@wc.com
C. Bryan Wilson
bwilson@wc.com
Katherine A. Petti
kpetti@wc.com

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
(202) 434-5000
(202) 434-5029 (fax)

Brady C. Williamson
bwilliam@gklaw.com
Jennifer Gregor
JGregor@gklaw.com
Mark W. Hancock
mhancock@gklaw.com
GODFREY & KAHN S.C.
One East Main Street
Suite 500
Madison, WI 53703-3300
(608) 257-3911
(608) 257-0609 (fax)

*Attorneys for Plaintiff Danaher Corporation*