IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DANAHER CORPORATION,

                        Plaintiff,

    v.

LEAN FOCUS, LLC, and DAMON
BAKER,

                      Defendants.

OPINION AND ORDER

19-cv-750-wmc

---

Plaintiff Danaher Corporation asserts sundry claims against its former employee, Damon Baker, and his new company, Lean Focus, LLC.  Before the court is defendants' motion to dismiss a number of those asserted claims, though not all claims.  For the reasons that follow, the court will grant the motion as to plaintiff's claims for:  (1) breach of the non-solicitation provision of Baker's 2012 Proprietary Interests Agreement and the nondisclosure provision of his 2014 Nondisclosure Agreement; and (2) tortious interference with Danaher employees.  In all other respects, however, the motion will be denied.

ALLEGATIONS OF FACT[1]

A. Overview of the Parties

Plaintiff Danaher Corporation is a "diversified, global company specializing in the fields of science and technology, with more than 67,000 employees working directly for

---

[1] For purposes of defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of" plaintiff.  *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (internal citation omitted).

Danaher or one of its 30 operating companies." (Compl. (dkt. #1) ¶ 17.)

Defendant Damon Baker is a former Danaher employee, who worked in various roles at Danaher and various of its operating companies for approximately nine years, including: "Senior Corporate Director of the Global DBS Office in Madison, Wisconsin; General Manager of Danaher Corporation at Orascoptic in Middleton, Wisconsin; Corporate Director at the Global Danaher Business System Office in Chicago; and Global Director of the Danaher Business System, Product Identification Platform at VideoJet Technologies in Chicago." (*Id.* ¶ 27.) "As a Senior Director and Master Trainer of DBS, Baker had access to and regularly used a variety of confidential information." (*Id.* ¶ 28.) In late 2016, Baker left his employment with Danaher. After a brief stint with another company, Baker then began operating his own company -- defendant Lean Focus, LLC -- full time in February of 2017.

**B. DBS**

"Danaher has invested substantial resources over the years to develop its Danaher Business System ('DBS')," which allegedly "combines the core principals of growth, leadership, and lean to drive every aspect of Danaher's culture, guide what Danaher does, and measure Danaher's execution on its goals." (*Id.* ¶¶ 5, 18.) "Danaher employees are trained in the principles and application of the DBS," with certain employees deemed "DBS experts." (*Id.* ¶ 19.)

Danaher further alleges that it takes measures to maintain DBS's confidentiality, including "implementing physical and electronic security measures, such as employing locks on physical offices and facilities, as well as passwords, segregating confidential

2

information, and employing security time-outs on computers and electronic equipment."

(*Id.* ¶ 21.)  "Danaher and its operating companies also maintain handbooks and procedures

that remind, implement, and enforce security protocols, and conduct regular training of

personnel concerning those safeguards."  (*Id.*)

## C. Employment Agreements

Consistent with these measures, Danaher requires employees to commit to maintain

confidentiality.  In Baker's case, on July 12, 2012, he signed an "Agreement Regarding

Competition and Protection of Proprietary Interests Agreement" ("Proprietary Interests

Agreement" or "PIA").  The agreement provides:

> At all times during and after the termination of my
> employment or relationship with the Company, I will not,
> without the Company's prior written permission, directly or
> indirectly for any purpose other than performance of my duties
> for the Company, utilize or disclose to anyone outside of the
> Company any Confidential Information, or any information
> received by the Company in confidence from or about third
> parties, as long as such matters remain trade secrets or
> confidential.  The restrictions regarding utilizing or disclosing
> confidential information shall cease thirty-six (36) months
> after the termination of my employment or relationship with
> the Company and shall only apply in all countries in which I
> performed work for the Company during the twenty-four (24)
> months preceding the termination of my employment or
> relationship with the Company.

(*Id.* ¶ 23; *see also* Mot. to Dismiss, Ex. A (dkt. #17-1) ¶ 1.b.)[2]  "Confidential information"

is defined in the Proprietary Interests Agreement as "the trade secrets and other

---

[2] Attached as Exhibit A to defendants' motion to dismiss, the court considers the terms of that agreement in deciding this motion because it is both referenced in plaintiff's complaint and central to its claims.  *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

confidential information of the Company which is not generally known to the public,"

listing examples as "customer and supplier identification and contacts, information about

customers, . . . business and customer strategy, techniques, [and] information regarding all

or any portion of the Danaher Business System." (*Id.*; Mot. to Dismiss, Ex. A (dkt. #17-

1) ¶ 1.a.)[3]

Baker's Proprietary Interests Agreement with Danaher also contained a Non-

Solicitation Provision at Paragraph 6, which states in pertinent part:

> I agree that during my employment or relationship with the
> Company and for a period of 12 months thereafter, I will not,
> nor will I assist any third party to, directly or indirectly, (i)
> raise, hire, solicit, encourage or attempt to persuade any
> employee or independent contractor of the Company, or any
> person who was an employee or independent contract of the
> Company during the 6 months preceding the termination of
> my employment or relationship with the Company, who
> possesses or had access to Confidential Information of the
> Company, to leave the employ of or terminate a relationship
> with the Company; (ii) interfere with the performance by any
> such persons of their duties for the Company; or (iii)
> communicate with any such persons for the purposes described
> in Paragraph 6(d)(i) and (ii).

(*Id.* ¶ 25; Mot. to Dismiss, Ex. A (dkt. #17-1) ¶ 6.d.)

On January 30, 2014, Baker also signed a Nondisclosure and Assignment Agreement

("Nondisclosure Agreement"), which requires in pertinent part:

> During and after my employment, I will not directly or
> indirectly utilize or disclose to anyone outside of the Company
> trade secrets or other confidential information of the
> Company. . . . Examples of confidential information include,
> but are not limited to, customer and supplier lists, pricing,

---

[3] The Proprietary Interests Agreement also provides that Baker will (1) not divert any tangible
materials for non-business purposes and (2) return company property when he left his employment.
(Compl. (dkt. #1) ¶ 24; Mot. to Dismiss, Ex. A (dkt. #17-1) ¶ 2.)

> margins, business and marketing plans and strategy, technical
> know-how, formulae, processes, designs, manufacturing
> techniques and software.

(*Id.* ¶ 31; Mot. to Dismiss, Ex. B (dkt. #17-2) ¶ 1.)  "At the Company's request or upon

termination of my employment," the Nondisclosure Agreement further requires Baker to

"return all originals and copies off Company property to the Company."  (*Id.* ¶ 32; Mot.

to Dismiss, Ex. B (dkt. #17-2) ¶ 2.)

### D. Baker's Departure and Development of Lean Focus

Baker left his employment with Danaher on or about September 12, 2016.  Seven

days later, he joined Eaton Corporation as Senior Vice President of Quality & Eaton

Business Excellence.  Baker worked for Eaton for approximately five months, during which

time Danaher expressed its concerns to Eaton about Baker's pre-departure behavior and

his role with Eaton.  Specifically, Danaher expressed concern that Baker had retained

confidential information in light of his pre-departure computer activities, which suggested

that, among other things, he had downloaded information, including his contact list,

retained USB devices, and wiped clean certain "external" hard drives and his company

iPhone before returning them.

In February 2017, after leaving the Eaton Corporation, Baker founded defendant

Lean Focus, LLC, and is its CEO, President and sole member.[4]  Plaintiff alleges that "Lean

Focus is set up as a DBS clone," citing Lean Focus's own LinkedIn page, which describes a

"Lean Focus Business System" that plaintiff claims "mirrors the elements of DBS."  (*Id.* ¶

---

[4] Plaintiff alleges that public records show that Baker actually founded Lean Focus years earlier, but
that does not change the analysis for purposes of considering defendants' motion to dismiss.

50.)  More specifically, plaintiff's complaint includes a grid and topics taken from the Lean Focus Business System, which it alleges copies DBS.  (*Id.* ¶¶ 65-66.)  Plaintiff further identifies Danaher references on Lean Focus's website and in social media posts.  (*Id.* ¶¶ 67-73.)

In addition to alleging that Lean Focus has copied plaintiff's DBS model, plaintiff also alleges that Lean Focus "has engaged in a concerted and coordinated effort to recruit and hire Danaher-affiliated employees, including employees working in Danaher's DBS Office," identifying a LinkedIn post by Baker that seeks employees for Lean Focus's "Talent Search Practice," and states "You MUST be FORMER Danaher Corporation experienced in HR functions."  (*Id.* ¶¶ 51, 54.)  Since 2017, Lean Focus has also hired nine former Danaher or Danaher operating company employees, at least some of whom had access to confidential information and trade secrets.  (*Id.* ¶¶ 7, 55-63.)

OPINION

As an initial matter, plaintiff Danaher is a Delaware Corporation, with its principal place of business in Washington, DC.  (Compl. (dkt. #1) ¶ 11.)  Defendant Lean Focus LLC's sole member is defendant Damon Baker, who is a citizen of Wisconsin.  (*Id.* ¶¶ 13, 15.)  Thus, there is complete diversity.  Moreover, the amount in controversy exceeds $75,000.  The court is satisfied, therefore, that it has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  In addition, since plaintiff alleges one federal law claim -- misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et *seq.* -- the court also has subject matter jurisdiction over this claim under 28 U.S.C. § 1331 and

can exercise supplemental jurisdiction over any remaining state law claims under 28 U.S.C. § 1367.

Plaintiff filed its complaint on September 11, 2019, asserting ten causes of action: (1) breach of Proprietary Interest Agreement against defendant Baker; (2) breach of Nondisclosure Agreement against Baker; (3) tortious interference with contract against both defendants; (4) conversion against both; (5) breach of duty of loyalty against Baker; (6) aiding and abetting breach of fiduciary duty against defendant Lean Focus; (7) violation of Wisconsin Computer Crimes Act, Wis. Stat. § 943.70 against Lean Focus; (8) civil theft, Wis. Stat. §§ 895.446, 943.20, against both; (9) misappropriation of trade secrets, Wis. Stat. § 134.90, against both; and (10) misappropriation of trade secrets, 18 U.S.C. § 1836 *et seq.* against both.  (Compl. (dkt. #1).)

While defendants answered the complaint, they also filed a partial motion to dismiss as is their right under Fed. R. Civ. P. Rule 12(b).[5]  Specifically, defendants seek dismissal of the following:  (1) breach of contract claims based on an argument that the restrictive covenants are unenforceable as a matter of Wisconsin law; (2) claim for injunctive relief, either because the restrictive covenants have expired or are barred by laches; (3) tortious interference claim for failing to state a claim; (4) breach of duty of

---

[5] In its opposition, plaintiff contends that defendants' motion should be one for judgment on the pleadings in light of the fact that they also filed an answer.  Given that defendants' motion only seeks to dismiss some claims or portions of claims, their decision to file their motion and an answer at the same time was at least prudent, if not necessary, at least to ripen before summary judgment those defenses listed in Rule 12(b)(1) through (7).  Regardless, the standard for reviewing a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6), *see Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017), so plaintiff's argument is of no consequence.

loyalty and abetting breach of fiduciary duty for failing to state a claim; and (5) trade secret misappropriation claims for failing to allege adequately that DBS is a trade secret.  The court will address defendants' challenges to each claim, though the bulk of the court's discussion will focus on defendants' motion to dismiss the breach of contract claims, consistent with the parties' own briefing.

## I.  Breach of Contract Claims Against Defendant Baker

Wisconsin Statute § 103.465 governs the enforceability of restrictive covenants in employment agreements.  *See Manitowoc Co., Inc. v. Lanning*, 2018 WI 6, ¶ 7, 379 Wis. 2d 189, 906 N.W.2d 130; *Geocaris v. Surgical Consultants, Ltd.*, 100 Wis. 2d 387, 388, 302 N.W.2d 76, 77 (Ct. App. 1981).  The statute itself states that restrictive covenants are enforceable "only if the restrictions imposed are reasonably necessary for the protection of the employer."  Wis. Stat. § 103.465.  Consistent with that directive, Wisconsin courts view restrictive covenants as "prima facie suspect as restraints of trade that are disfavored at law."  *Star Direct*, 2009 WI 76, at ¶ 19; *see also Streiff v. Am. Family Mut. Ins. Co.*, 118 Wis. 2d 602, 611, 348 N.W.2d 505, 510 (1984) ("They must withstand close scrutiny to pass legal muster as being reasonable; they will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires; they are to be construed in favor of the employee.").  Moreover, the employer has the burden of showing that the restrictive covenant is reasonably necessary for its protection.  *Manitowoc Co.*, 2018 WI 6, ¶ 41; *see also Geocaris*, 100 Wis. 2d at 388, 302 N.W.2d at 77.  Still, in order to show that the restrictive covenant is unreasonable based on the pleadings alone, the plaintiff must demonstrate that the covenant is unreasonable on its face without any

reference to disputed facts. *Id.*

Courts typically examine the totality of the circumstances when determining the reasonableness of a non-compete. *Henderson v. U.S. Bank, N.A.*, 615 F. Supp. 2d 804, 810 (E.D. Wis. 2009). In particular, the restraint must satisfy the following five "prerequisites":

> (1) be necessary for the protection of the employer, that is, the employer must have a protectable interest justifying the restriction imposed on the activity of the employee;
>
> (2) provide a reasonable time limit;
>
> (3) provide a reasonable territorial limit;
>
> (4) not be harsh or oppressive as to the employee; and
>
> (5) not be contrary to public policy.

*Manitowoc Co.*, 2018 WI 6, ¶ 40 (citing *Star Direct, Inc. v. Dal Pra*, 2009 WI 76, ¶ 20, 319 Wis. 2d 274, 767 N.W.2d 898).

Here, defendants challenge plaintiff's breach of the Non-Solicitation Provision of the Proprietary Interest Agreement and breach of the Nondisclosure Provisions of both agreements, which the court will address in that order.

## A. PIA's Non-Solicitation Provision

During the course of his employment *and* "for 12 months thereafter," the 2012 Proprietary Interest Agreement precludes Baker from soliciting

> any employee or independent contractor of the Company, or any person who was an employee or independent contractor of the Company during the 6 months preceding the termination of my employment or relationship with the Company, who possesses or had access to Confidential Information of the

> Company, to leave the employ of or terminate a relationship
> with the Company.

(Mot. to Dismiss, Ex. A (dkt. #17-1) ¶ 6.d ("the Non-Solicitation Provision").)

Defendants contend that this provision suffers two, facial defects under Wisconsin law:
(1) Danaher does not have a protectable interest that justifies the scope of the restriction;
and (2) there is no territorial limit.

As for the latter defect, defendants acknowledge that a "reasonable territorial limit"
need not be expressed in geographic terms, but may instead be "expressed in terms of a
"particular group." (Defs.' Opening Br. (dkt. #17) 9 (citing *Rollins Burdick Hunter of Wis.,
Inc. v.* Hamilton, 304 N.W.2d 752, 755 (Wis. 1981)).)  As such, both of defendants'
challenges to the Non-Solicitation Provision turn on whether the provision is limited to
some reasonable subset of employees.  Further, as the Wisconsin Supreme Court noted in
*Manitowoc*, while discussing the reasonableness of such employee subsets, state and federal
"cases and literature explain that ordinarily an employer's protectable interest is limited to
retaining top-level employees, employees who have special skills or special knowledge
important to the employer's business, or employers who have skills that are difficult to
replace." 2018 WI 6, at ¶ 49.

In defense of the Non-Solicitation Provision at issue, plaintiff contends that the
Proprietary Interest Agreement with Baker contains three, material limitations:  "(1) it
extends only to the subset of current employees, independent contractors, and former
employees present at Danaher at least six months before Baker left; (2) it covers only
persons who received confidential information; and (3) confidential information is limited
to 'trade secrets and other confidential information' which 'is not generally known to the

10

public' and is either related to the research or development of Danaher or its prospective vendors or customers or results from work performed by Baker." (Pl.'s Opp'n (dkt. #23) 17-18 (citing Mot. to Dismiss, Ex. A (dkt. #17-1) ¶ 1.a (defining "Confidential Information"); *id.* ¶ 6.d).)  With respect to the first, purported limitation, even plaintiff's strained interpretation of the provision limits Baker from soliciting any employees, whether current or former, who worked at Danaher at least six months before he departed, which is to say almost all of Danaher's employees.  Of course, as defendants point out, the plain language of the provision is even broader than that, since it expressly includes:  (1) 67,000 current employees, plus its myriad independent contractors, *and* (2) all former employees and contractors who worked at Danaher during the six months before Baker's departure. Of course, the 12-month sunset clause from the end of Baker's employment would necessarily limit the length of the prohibition on defendants' solicitation of those employees temporarily.

In contrast, at least at first glance, the second and third limitations offered by plaintiff would appear to have more traction, since the plain language of the Non-Solicitation Provision is limited to employees and independent contractors, whether former or current, who possessed or had access to confidential information.  Still, as defendants point out in their reply brief, the definition of "confidential information" in the Proprietary Interest Agreement is very broad indeed, covering not just legally protected trade secrets, but

> other confidential information of the Company which is not generally known to the public, and which (a) is generated or collected by or utilized in the operations of the Company [or in] the actual or anticipated business or research or

11

> development of the Company or the Company's actual or prospective vendors or customers; or (b) is suggested by or results from any task assigned to me by the Company or work performance by me for or on behalf of the Company or any customer of the Company.

(Mot. to Dismiss, Ex. A (dkt. #17-1) ¶ 1.a.)[6]  This definition goes on to provide a list of more than *fifty* examples of confidential information, including "information regarding all or any portion of the Danaher Business System." (*Id.*)  As defendants further point out, plaintiff alleges in its complaint that "[e]ach Danaher operating company utilizes DBS," and "Danaher employees are trained in the principles and application of the DBS." (Compl. (dkt. #1) ¶¶ 18-19.)  Accordingly, this would again leave Baker prohibited from soliciting virtually all Danaher employees.

In light of this extremely broad definition of "confidential information," which covers "all or any portion of" DBS, a tool that plaintiff alleges is widely used and for which Danaher's employees received training, the court agrees with defendants that there are no meaningful limitations on plaintiff's Non-Solicitation Provision.  As in *Manitowoc*, the provision here is neither limited to "the solicitation of employees with sensitive or company-specific information" nor to "employees with whom [defendant] has worked or to those employees with skill sets with which [Baker] was familiar."  2018 WI 6, at ¶ 50. Instead, very much like the non-solicitation provision in *Manitowoc*, the provision here amounts to a "sweeping prohibition," effectively preventing Baker from soliciting virtually *any* Danaher employee.  *Id.* at ¶ 56.  Therefore, the plain language of the provision is

---

[6] Some of the bracketed inserts in direct quotes from plaintiff's Agreements with Baker is a product of the poor quality of the copy provided by defendants, which makes it difficult to read in places.

overbroad on its face under Wisconsin law, and the court must dismiss plaintiff's claim for breach of the Non-Solicitation Provision of the 2012 Proprietary Interest Agreement (part of Count I).

### B. Agreements' Nondisclosure Provisions

As an initial issue, unlike the Non-Solicitation Provision in the Proprietary Interests Agreement just discussed, plaintiff disputes that the enforceability of the Nondisclosure Provisions in that Agreement and in the 2014 Nondisclosure Agreement are governed by Wisconsin Statute § 103.465.  Citing *IDX Systems Corporation v. Epic System Corporation*, 285 F.3d 581 (7th Cir. 2002), plaintiff argues in particular that the temporal and geographic restrictions of § 103.465 do not apply to nondisclosure agreements.  However, plaintiff ignores that *IDX Systems* involved a nondisclosure agreement entered into between "suppliers and users of intellectual property," not between an employer and employee, like that at issue here.  285 F.3d at 585.  Indeed, in reviewing Wisconsin case law, the Seventh Circuit emphasized the distinction between the nondisclosure agreement at issue in *IDX Systems* and agreements entered into between employers and employees, explaining that "Wisconsin allows a 'much greater scope of restraint in contracts between vendor and vendee.'" *Id.* (quoting *Fullerton Lumber Co. v. Torborg*, 270 Wis. 133, 139, 70 N.W. 2d 585, 588 (1955)); *see also Metso Minerals Indus., Inc. v. FLSmidth-Excel LLC*, 773 F. Supp. 2d 980, 984 (E.D. Wis. 2010) (distinguishing *IDX Systems* on same basis and rejecting argument that § 103.465 analysis was inapplicable to non-disclosure agreement between employer and employee); *Friemuth v. Fiskars Brands, Inc.*, 681 F. Supp. 2d 985, 990 (W.D. Wis. 2010) (distinguishing *IDX Systems* because "[i]n that case, the agreement at issue was between a

supplier and user of intellectual property instead of between and employer and employee").[7]   Accordingly, the requirements of § 103.465 apply equally to the Nondisclosure Provisions at issue here.

Turning to the requirements of § 103.465, defendants specifically contend that the Nondisclosure Provision in the 2012 Property Interest Agreement is deficient because its geographic restriction is not reasonably limited to protect Danaher's interests.[8]  As quoted in full above, the Nondisclosure Provision in the Property Interest Agreement "only appl[ies] in all countries in which [Baker] performed work for the Company during the twenty-four (24) months preceding the termination of [his] employment or relationship with the Company."  (Mot. to Dismiss, Ex. A (dkt. #17-1) ¶ 1.b.)  Plaintiff directs the court to Wisconsin cases approving similar restrictions tied to the employee's territory or geography during his or her employment.  *See, e.g.*, *Chuck Wagon Catering, Inc. v. Raduege*, 88 Wis. 2d 740, 754, 277 N.W.2d 787, 793 (1979) ("In Wisconsin a covenant is

---

[7] Defendants acknowledge that a nondisclosure agreement that only restricts disclosure of trade secret information is exempt from the requirements of § 103.465.  (Defs.' Opening Br. (dkt. #17) 11 (citing *Gary Van Zeeland Talent, Inc. v. Sandas*, 267 N.W.2d 242, 246-47 (Wis. 1978)).)  The provisions at issue here, however, encompass "other confidential information."  Moreover, in its opposition brief, plaintiff does not argue that § 103.465 does not apply because of this exception, instead relying on the holding in *IDX Systems*, which this court has found distinguishable for the reasons explained above.

[8]  In their reply brief, defendants also challenge the length of the temporal restriction -- thirty-six months after the end of employment -- as unreasonable, but this argument was not made in their opening brief.  Accordingly, the court declines to consider it as part of defendants' motion to dismiss, other than to note that they remain free to raise it at summary judgment or at trial.  In its opening brief, defendants also argued that this provision is suspect because the confidential information had already been disclosed by the time he signed it.  In response, however, plaintiff rightly notes that Baker did not sign these agreements until five and seven years into his employment, meaning "[t]he dates of execution simply reflect that, as Baker became more senior and exposed to confidential information, such protections became necessary."  (Pl.'s Opp'n (dkt. #23) 24.)  Defendants sensibly dropped this argument in reply.

considered reasonable as to territory if, like this covenant, it is limited to the route or customers defendant actually services.") (citing cases); *Pollack v. Calimag*, 157 Wis. 2d 222, 238, 458 N.W.2d 591, 599 (Ct. App. 1990) ("A covenant's geographic restraint is reasonable if it is limited to the area actually served."). As defendants point out in their reply, however, these cases involve far more limited territories than whole countries at issue here. Even so, without more factual context, the court cannot make a determination as to the reasonableness of the scope of this territorial limitation based on the plain language of this provision alone and thus declines to find it void on the pleadings.[9]

Turning to the 2014 Nondisclosure Agreement, defendants contend that the nondisclosure provision at paragraph 1 is unreasonable because it has *no* time or territorial restriction. As quoted above, that provision simply states, "During and after my employment, I will not directly or indirectly utilize or disclose to anyone outside of the Company trade secrets or other confidential information of the Company." (Mot. to Dismiss, Ex. B (dkt. #17-2) ¶ 1.) In response, plaintiff suggests that the court view this provision as an "extension of Baker's 2012 PIA," apparently arguing that the same time and geographic restrictions in the Proprietary Interest Agreement should apply to the 2014 Nondisclosure Agreement. (Pl.'s Opp'n (dkt. #23) 22.) Tellingly. plaintiff cites *no* support

---

[9] Defendants also cite to an unpublished Wisconsin Court of Appeals case in support of an argument that the scope of the information covered by the nondisclosure provision (and the fact that it precludes disclosure to "any person, not just competitors") renders it unreasonable. (Defs.' Opening Br. (dkt. #17) 14 (citing *Milprint, Inc. v. Flynn*, 724 N.W.2d 274 (Wis. Ct. App. 2006) (unpublished)).) As far as this court could tell, this decision has not been cited by any other court. Moreover, it precedes the Wisconsin Supreme Court's list of prerequisites described in *Star Direct*, 2009 WI 76, at ¶ 20. Regardless, the court is unwilling to speculate about its relevance in this case without more facts.

for this suggestion, and the court could find no cases in which Wisconsin courts applied an express limitation on a provision in one contract to a similar provision in another contract without an express reference.  If anything, one might find the *absence* of that same limitation in the separate provision as a basis to infer the opposite.

Perhaps conceding the precarious enforceability of this provision, plaintiff argues in the alternative that "Paragraph 1 of the 2014 agreement is divisible from the remainder of Baker's covenants as a clearly demarcated subsection in a standalone agreement." (*Id.* (citing *Star Direct*, 2009 WI 76, at ¶ 78).  Even more specifically, plaintiff argues that this provision is divisible from the earlier 2012 Proprietary Interest Agreement.  In response to this alternative argument, defendants do *not* attempt to argue that the 2012 Nondisclosure Provision is unenforceable should the court find the 2014 provision is unreasonable on its face.  As for whether the other provisions of the 2014 Nondisclosure Agreement -- concerning return of property and ownership of intellectual property -- are severable from the Nondisclosure Provision in paragraph 1, the court need not reach that issue at this time either, since the present motion only seeks dismissal of plaintiff's claim of breach of paragraph 1.

In light of the lack of any temporal or territorial limitation, the court agrees that the Nondisclosure Provision in paragraph 1 of the 2014 Agreement is unreasonable on its face under Wis. Stat. § 103.465.  Accordingly, the court will also grant defendants' motion to dismiss plaintiff's breach of contract claim based on that provision of the 2014 Nondisclosure Agreement (Count II).  However, plaintiff may continue to pursue its breach of contract claim based on the Nondisclosure Provision in the 2012 Proprietary Interest

16

Agreement.

## II. Challenges to Injunctive Relief

Next, defendants seek to dismiss any claim for injunctive relief based on two arguments:  (1) the restrictive covenants in the 2012 Proprietary Agreement have expired; and (2) plaintiff delayed in seeking injunctive relief, which is now barred by the doctrine of laches.  As plaintiff points out in its response, courts are disinclined to consider the availability of injunctive relief at the pleadings stage.  *See United States v. Spectrum Brands, Inc.*, 218 F. Supp. 3d 794, 822 (W.D. Wis. 2016) ("[T]here is a dearth of case law supporting dismissal in this context at the pleadings stage, making dismissal of the prayer for injunctive relief premature at best.").  This court remains hard-pressed to see any efficiencies gained by taking up such a challenge here as well.

Moreover, besides the two breach of contract claims, injunctive relief may be appropriate based on other of plaintiff's claims -- namely, misappropriation of trade secrets under state and federal law and a violation of the Wisconsin Computer Crimes Act.  In its reply brief, defendants point out that those statutes simply provide for the *availability* of injunctive relief, but that just reinforces the court's general skepticism about motions to dismiss a claim for a permanent injunction at the pleadings stage.

Finally, plaintiff also directs the court to cases providing tolling for "the period of breach to allow a plaintiff the benefits its bargained-for agreement," providing even further support for denying this portion of the motion and delaying any determination as to the appropriateness of injunctive relief until the record is developed.  (Pl.'s Opp'n (dkt. #23) 28 (citing *JAK Prods., Inc. v. Wiza*, 986 F.2d 1080, 1090 (7th Cir. 1993)).)  For all of these

17

reasons, the court will deny this portion of defendants' motion without prejudice to its renewal at the time of summary judgment or trial.

## III. Tortious Interference

Defendants further seek dismissal of plaintiff's tortious interference claim. Plaintiff appears to pursue this claim under two, distinct theories: (1) interference with its employees and (2) interference with its "business partners, consultants, collaborators and customers." In their motion to dismiss, defendants contend that if the court finds that the Non-Solicitation Provision of the 2012 Proprietary Interest Agreement is unenforceable, then this portion of the tortious interference claim similarly fails because "[t]he law 'does not protect against the raiding of a competitor's employees[.]" *Manitowoc*, 2018 WI 6, at ¶ 49 (internal citation and quotation marks omitted). In response to this specific argument, plaintiff simply maintains that the Non-Solicitation Provision is enforceable. Having just concluded above that it is not, this leaves plaintiff with nothing to hang its hat on with respect to any alleged interference with the Non-Solicitation Provision claim.[10] Accordingly, the court will dismiss plaintiff's tortious interference claim that is based on defendants' alleged interference with any contractual relationship with its own employees.

As for the remainder of plaintiff's claim -- as to tortious interference with "business partners, consultants, collaborators and customers" -- plaintiff must allege: (1) it had a contract or a prospective contractual relationship with a third party; (2) defendants interfered with that relationship; (3) the interference was intentional; and (4) there was a

---

[10] Perhaps solicitation of certain, specific employees may give rise to such a claim, but plaintiff does not make that argument, nor plead that claim.

causal connection between the interference and damages. *Briesemeister v. Lehner*, 2006 WI App 140, ¶ 48, 295 Wis. 2d 429, 720 N.W.2d 531. The alleged interference must also be without a recognized "justification and privilege," *id.*, although the defendants, as the alleged interfering parties, bear the burden of proving that their actions were justified or privileged. *Briesemeister,* 2006 WI App 140, at ¶ 50.

In light of this burden, defendants argue that dismissal is appropriate because: (1) plaintiff failed to plead the intent element of tortious interference; and (2) the claim is subject to the protection of the competition privilege. In support of their *first* argument, defendants point out that plaintiff failed to plead expressly that "Baker and Lean Focus acted with the *primary purpose* of interfering with Danaher's business relationships." (Defs.' Opening Br. (dkt. #17) 20 (emphasis added).) As plaintiff points out, however, this so-called, "specific intent" element can be satisfied if defendant "knew or should have known that such interference was substantially certain to occur as a result of the conduct." (Pl.'s Opp'n (dkt. #23) 34-35 (quoting *Briesemeister*, 2006 WI App 140, at ¶ 49).) *See Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wis., S.C.*, 2005 WI App 217, ¶ 20, 287 Wis. 2d 560, 706 N.W.2d 667 (in the context of a tortious interference claim, "it is reasonable to infer that a person intends the natural and probable consequences of his or her actions"); *Briesemeister*, 2006 WI App 140, at ¶¶ 41-42 (framing intent question as "knew or should have known").

Here, reading the complaint as a whole, plaintiff has alleged defendants' use of (1) the Danaher name on its website, (2) the DBS business model itself, and (3) plaintiff's contact list. (Pl.'s Opp'n (dkt. #23) 35 (citing Compl. (dkt. #1) ¶¶ 4, 34, 44, 46, 67, 79,

90, 101, 109, 115).)  At least at the pleading stage, these allegations are sufficient to give rise to a reasonable inference that defendants knew or should have known that these actions would result in interference with Danaher's current or prospective relationships with its business partners and customers.

As for defendants' asserting a competition privilege, it is their burden to prove that this privilege applies.  *Briesemeister,* 2006 WI App 140, at ¶ 50.[11]  As a result, plaintiff need not anticipate a possible privilege defense in its complaint.  *See Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).  Moreover, to successfully invoke this privilege, defendants will have to prove that they did not employ "wrongful means."  *Kohler Co. v. Kopietzki*, No. 13-CV-1170, 2016 WL 1048036, at *5 (E.D. Wis. Mar. 11, 2016); *Metso Minerals Indus., Inc. v. FLSmidth-Excel LLC*, No. 07-CV-926, 2010 WL 55845, at *4 (E.D. Wis. Jan. 5, 2010) (same); Restatement (Second) of Torts § 768 (1979) ("If the actor employs wrongful means, he is not justified under the rule stated in this Section.").

Again, for pleading purposes, plaintiff had done enough to call into question the privileges' application by alleging that defendant Baker abused his fiduciary relationship, made material misrepresentations and misappropriated trade secrets.  Thus, while the court will grant defendants' motion to dismiss the portion of the tortious interference claim that concerns solicitation of Danaher employees (part of Count III), the motion as to that claim will be denied in all other respects.

---

[11] The lack of privilege or interference is sometimes described as a fifth element of a tortious interference claim, but even when it is described as such, courts have recognized that it is the defendant's burden to prove this "element."  *See, e.g., Westphal v. Smelser*, 2008 WI App 135, ¶ 26, 313 Wis. 2d 830, 756 N.W.2d 809.

**IV. Breach of Duty of Loyalty and Abetting Breach of Fiduciary Duty**

Defendants also seek to dismiss plaintiff's claims based on breaches of the duty of loyalty and fiduciary duty.  In particular, defendants contend that plaintiff (1) failed to adequately allege that Baker was a "key" employee and (2) failed to protect its trade secrets and other confidential information.  Defendants further assert plaintiff cannot "reasonably invoke the benefit of that duty when it lacks any trade secret or confidential information that is protectable under Wisconsin law."  (Defs.' Opening Br. (dkt. #17) 22.)  To assert a breach of duty of loyalty claim against an employee who is *not* an officer or director of a corporation, plaintiff must allege that Baker was is a "key employee," which "depend[s] on the precise nature of his or her employment duties."  *Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 42, 294 Wis. 2d 274, 303, 717 N.W.2d 781, 796.  In this case, plaintiff alleges that Baker occupied senior-level roles, including "Senior Corporate Director, General Manager, and Global Director," and that he was a "Master Trainer" of DBS (Compl. (dkt. #1) ¶¶ 27-28, 112-13), which is sufficient to infer that he was "key" at the pleading stage.  As for proof of plaintiff's efforts, the court find plaintiff's allegations sufficient for the same reason it will allow plaintiff's trade secret misappropriation claims to survive, as discussed in the final section below.

**V. Trade Secret Misappropriation**

Finally, defendants seek dismissal of plaintiff's trade secret misappropriation claims under both state and federal law, arguing that plaintiff failed to adequately allege that DBS is a trade secret.  As described in greater detail in the fact section above, the complaint contains sufficient allegations to support a finding that certain aspects of DBS are entitled

to trade secret protection.  While some other parts of this business model may well be in the public domain, this does not undermine a finding that certain characteristics or components are entitled to protection.  *See 3M v. Pribyl*, 259 F.3d 587, 595–96 (7th Cir. 2001) ("A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret.").

Certainly, defendants can seek additional information through discovery as to what specific aspects or components (or their unique combination) plaintiff contends are entitled to trade secret protection, and if appropriate, seek summary judgment on the basis that plaintiff cannot prove to the satisfaction of a reasonable jury that these aspects or components are entitled to trade secret protection.  However, in its complaint, plaintiff has adequately identified its trade secrets, including its efforts to maintain their confidentiality, and defendants have yet to offer a basis to dismiss these claims on their face.

ORDER

IT IS ORDERED that defendants Lean Focus, LLC, and Damon Baker's partial motion to dismiss (dkt. #22) is GRANTED IN PART AND DENIED IN PART.  The motion is GRANTED as to:  (1) the breach of the Non-Solicitation Provision of the 2012 Proprietary Interest Agreement (part of Count I); (2) the breach of the Nondisclosure Provision of the 2014 Nondisclosure Agreement (Count II); and (3) the portion of the tortious interference claim concerning solicitation of employees (part of Count III).  In all other respects, the motion is DENIED.

22

Entered this 24th day of July, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge