IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
------------------------------------------------------------------------

DANAHER CORPORATION,

                Plaintiff,　　　　　　　　　　　　　　　　ORDER

  v.

                                                 19-cv-750-wmc

LEAN FOCUS, LLC, *et al.*,

                Defendants.
------------------------------------------------------------------------

       This order addresses the currently-pending discovery motions in this most contentious of civil lawsuits. This is a literal description: no other civil lawsuit in the past year has been as disputatious during discovery as Danaher v. Lean Focus. The parties and their attorneys have wrested this ignominious distinction from another business lawsuit, which will remain unnamed because those attorneys voluntarily withdrew two of their three most recent discovery motions, and since then have heeded this court's admonition in its order on their final discovery dispute:

> I am directing the parties to think twice before filing more discovery motions. In the past year, no other lawsuit in this court has had as many discovery disputes as this one. Not the class actions, not the patent lawsuits, not the product liability lawsuits, not the civil rights lawsuits. There are skilled, zealous attorneys in these other cases and they all want to win, yet they all have managed to conduct discovery without the constant *sturm und drang* that radiates from this lawsuit. I already had picked up this file and had started working on the three pending motions. I was going to close this order by warning counsel that we had moved into Rule 37(b) territory: whoever lost the next discovery motion would have their discovery closed. Period. I am not going to issue that warning today, but counsel should bear in mind how thin the ice has become.

At this point in the instant lawsuit, I am not threatening either side with a discovery cutoff, although this could happen in the future. Right now, the important thing is to issue rulings. Having read everything that the parties have submitted on each of their motions, having

considered the case law, the applicable rules, the specific facts and circumstances of this case, and the considerations of fairness and proportionality in reaching each of my conclusions, these are my rulings, in docket order:

**127: Defendants' Motion To Compel: Four custodians and a Box.com account**

Defendants ask the court to compel plaintiff to produce documents from four additional custodians–Sandy Phelps, Ricky Richardson, Tony Hren and Nicole Gavros–and from plaintiff's Box.com collaboration folders. Defendants open by repeating their theme that this lawsuit is nothing more than a brazen attempt by an international conglomerate unfairly to crush a competing small consulting company. Duly noted. Defendants then contrast the amount of discovery demanded and obtained by plaintiff in this lawsuit with what defendants characterize as the small amount of discovery that defendants seek in their motion to compel. Defendants assert that plaintiff's claim of duplicativeness and proportionality are unfounded.

The course of custodian discovery outlined by defendants shows that it has been circuitous and contentious from the outset. Negotiations have failed, leading to the instant motion. In a series of bullet points, defendants explain why this court should find that custodian discovery from Phelps, Richardson, Hren and Gavros is relevant, proportional, and therefore discoverable.

As for the Box.com collaboration folders, defendants report that three former employees of plaintiff–Baker, Richardson and Christopher–recall being instructed or encouraged to access and use documents in the requested collaboration folders to create DBS tools; Baker and Richardson also recall that the materials they accessed including materials from other companies.

Defendants contend that this would be highly relevant to proving that elements of plaintiff's claimed trade secrets already were generally known, and that plaintiff has unclean hands. If, in fact, the Box.com documents really no longer exist, then defendants want plaintiff to explain how and when they were deleted so that defendants can assess whether to assert spoliation. Toward that end, defendants ask this court to order plaintiff to answer four questions about any document holds it may have entered. *See* dkt. 127 at 13. Defendants close by explaining the high relevance of this information and the illogic of plaintiff's various arguments against disclosure.

In its response, (dkt. 138), plaintiff opens by reasserting its oft-stated view that defendant Lean Focus could not exist but for its reliance on trade secret information stolen by defendant Baker, plaintiff's disloyal former employee. Duly noted. Plaintiff then offers its view of how discovery has proceeded thus far. Plaintiff explains why it offered Sekowski and Aquino as its custodians and acknowledges that it agreed to produce documents from multiple centralized storage locations, including its current repository ("Danaher Connect") and its former repository, Box.com, which is the subject of defendants' motion. Plaintiff then added two more custodians at defendants' request: Fusco and Carini.

Like defendants, plaintiff reports that there has been a great deal of contentious back-and-forth over what discovery is appropriate, what discovery each side actually has agreed to produce, and what discovery has been promised but not delivered. Each side believes that it is more sinned against than sinning. Plaintiff reports that its document review team has spent over 1000 hours reviewing over 100,000 documents–of which 60,000 were produced–as part of its disclosures from its custodians and centralized document repositories. Plaintiff estimates that

to renew these efforts in response to defendants' current discovery demands would take about six weeks and cost about $100,000.

Those are big numbers, but by themselves they would not persuade the court to deny defendants' motion in a case of this nature and this scope. But it would take a strong showing of need by defendants for the court to order plaintiff to provide the requested information. Defendants have not made that showing. Having carefully considered both sides' factual proffers and arguments for and against requiring disclosures from four more custodians, I conclude that the juice is not worth the squeeze. Sekowski, Aquino, Fusco and Carini suffice as plaintiff's custodians. Adding Hren, Richardson, Phelps and Gavros as custodians is unlikely to result in anything new, different, or useful.

Then there's Box.com. According to plaintiff, by early 2018 it had transitioned its documents from that repository to Danaher Connect, its current repository, and it has produced the Danaher Connect documents, which are not part of defendants' current motion. Plaintiff retired its Box.com repository before it filed this lawsuit, but plaintiff still ran the parties' search terms past the retired account and produced its responsive documents. According to plaintiff there are no more Box.com documents to produce. The court accepts that answer and declines to order plaintiff to disclose that which does not exist.

This segues to defendants' spoliation concerns, which plaintiff points out were not part of any discovery request. Fair enough. At this late date, the court will deem the four questions posed by defendants on page 13 of their motion as discovery requests; plaintiff's answers to them are due within 30 days after entry of this order, namely by May 27, 2021. I will consider this to be a "grant" of defendants' motion, in very small part; otherwise, this motion is denied.

4

**149: Defendants' Motion To Compel: Interrogatory No. 18**

In their Interrogatory No. 18, defendants ask plaintiff to identify the specific slides and pages within the DBS that plaintiff contends are trade secrets. Having considered both sides submissions regarding this dispute, I conclude that defendants' request is off-target as overly granular and literalist. The criminal law analogue to defendants' approach is for the defendant to employ a divide-and-conquer analysis to challenge a search instead of the more appropriate totality-of-the-circumstances test. *See, e.g., United States v. Rodriguez-Escalera*, 884 F.3d 661, 668 (7th Cir. 2018) (comparing and contrasting these approaches when evaluating reasonable suspicion to extend a traffic stop). The movie analogue is Cameron Frye looking at Seurat's *Sunday Afternoon on the Grande Jatte* in Ferris Bueller's Day Off.

Defendants get the focus right when they explain that their defense turns on whether plaintiff's *concepts* are publicly available; this is roughly analogous to defending against a claim of patent infringement by asserting obviousness and prior art. But defendants complain that they have been forced to expend significant time and effort identifying evidence of public availabiltiy for concepts within the DBS that it predicts plaintiff then will *agree* are publicly available. Defendants characterize this as moving the goalpost. From a discovery perspective, the court views this as the parties continuing to talk past each other.

Which segues to plaintiff's response (dkt. 157), in which it expresses incredulity that defendants would, at this juncture in this lawsuit, claim that they do not know what plaintiff's trade secrets are. According to plaintiff, the instant discovery request is premised on a radical distortion of plaintiff's claims. Plaintiff reports that is has consistently asserted that DBS is an integrated business system and that the system, including its component tools, are the trade

5

secrets at issue. Without weighing in on the merits of plaintiff's claims, as a discovery matter, plaintiff's response to defendants' motion is persuasive.

First, plaintiff has adequately disclosed its theory of liability, which is not dependent on whether any particular document or set of documents is in the public domain. Plaintiff points to its two expert reports (dkts. 155 and 156) as setting forth the whats, the hows and the whys of its claims against defendants. Most relevant to defendants' discovery motion is Dr. Spear's opinion that DBS is a unified, cross-disciplinary system that structures tools and tool sequences into a larger system that integrates the system across all functions of a company. Dkt. 155 at 15. As part of this, Dr. Spear acknowledges that some of plaintiff's tools draw upon known lean manufacturing and other business principles, but opines that plaintiff has "built out and improved those concepts to create novel business processes that are not available outside of the company." *id.* at 54.

To the extent that defendants view this report as vague and unhelpful, that's an argument better made in a Rule 56 motion or at trial. If plaintiff's DBS really is just another glossy rehash of commonplace business systems jargon, then defendants win because there's no "there" there.[1]

Plaintiff also claims to addressed these issues in detailed interrogatory responses that identify the trade secrets at issue and match them up with defendants' business systems tools that allegedly are based on these trade secrets. This also seems to the gist of Sekowski's expert report, which contains myriad side-by-side comparisons of the DBS and the LFBS. So, to the extent that the defendants contend that they need the list of every single document that plaintiff

---

[1] Per Gertrude Stein, *Everybody's Autobiography* (1937).

claims is confidential in order to understand plaintiff's theory, the record does not support this contention.

But there's a second facet to defendants' motion: they are seeking every single document that plaintiff contends is confidential so that defendants prove otherwise and fashion these not-actually-confidential documents into a mosaic of refutation. That has some curb appeal, but the cost/benefit ratio militates against it granting the instant motion. As already noted, plaintiff's theory of misappropriation isn't based on individual documents or slides, it is built on their *gestalt.* Proving that many of the underlying documents are not confidential isn't going to impact this much. Even so, it's a valid theory and defendants are entitled to discovery on it. But they've gotten what they actually need to make their point. On February 26, 2021, Judge Conley ordered plaintiff to identify the specific DBS tools that plaintiff alleges that defendant Baker purloined and that defendants are improperly using (dkt. 146 at 24); plaintiff points to its subsequent disclosure of 142 specific documents that it claims constitute its trade secrets and that defendants allegedly misappropriated (dkt. 157-2). These are the heartland documents here; if there are more yet to be disclosed, Judge Conley already has imposed an obligation on plaintiff to disclose them. From the court's perspective, these core documents give defendants the material they need to establish that there's nothing special or confidential about the DBS. It isn't worth the time, effort and money for plaintiff to sort, label and disclose peripheral documents that are allegedly confidential so that defendants can attempt to show that they really are not.

This motion is denied.

**151: Plaintiff's Motion To Compel: Interrogatories 3 and 6**

With no sense of irony, plaintiff has filed the same sort of discovery motion against defendants that defendants have filed against plaintiff and to which plaintiff has vigorously objected and which this court has denied. Spoiler alert: I'm also going to deny plaintiff's motion.[2]

Plaintiff's motion is directed against both defendants, seeking the same information that was requested of them in different interrogatories. For ease of reference, the parties refer simply to Interrogatory 6, which asks defendants to identify every document or communication in their possession that includes *any* information obtained from plaintiff. Defendants responded to this interrogatory, but according to plaintiff, their disclosures were facially incomplete: a comparison of the interrogatory response to defendants' production documents showed material gaps in the interrogatory response. More alarming to plaintiff, defendant Lean Focus's senior vice president, Guy Schiller–who used to work for plaintiff–revealed at his deposition that he had kept some material of plaintiff's and had used this material while working for Lean Focus. Defendants had not disclosed this in their response to Interrogatory 6. This led plaintiff to insist that defendants go back to conduct a proper investigation that disclosed *all* such Danaher material, including that possessed or used by defendants' independent contractors. Plaintiff contends that this is so important–and so likely to provide information critical to plaintiff's claims–that any cost to defendants can be justified under a proportionality review.

---

[2] More eternal recurrence: in its motion, plaintiff begins by recounting yet again its version of Baker's treachery, dkt. 151 at 1, while defendants rehash their David-against-Goliath narrative, dkt. 165 at 2-3.

No it isn't, and no it can't. This is just a variation of defendants' discovery motions, addressed above, which also left the court unmoved. The parties and their attorneys don't have to trust each other–and they obviously don't, at least regarding discovery–but this doesn't justify these cross-demands to go back and search the same documents again at great expenses. Plaintiff's claim that there could be critical information hidden out there is unpersuasive. Yes, Schiller's statements raised concerns, but the back story that defendants provide in their response (dkt. 165 at 5) persuades the court that plaintiff's characterization of what actually happened is hyperbolic and the remedy plaintiff suggests is overkill. Plaintiff may have been seriously wronged here, and it may end up winning this civil lawsuit, but it has constantly overplayed its hand in its submissions to this court and in its requests for discovery relief. Understanding what happened with Schiller, I do not see any intentional attempt by anyone– defendants or their independent contractors–to withhold from plaintiff the discovery that it needs and to which it is entitled. In most cases, the parties and their attorneys would have worked this out on their own, but as noted at the outset, this case isn't like most.

Even if this court were more sympathetic to plaintiff's position on this dispute, it would not grant the motion to compel. As defendants point out, Interrogatory 6 is imprecisely worded and hopelessly broad. Even a more tightly drafted interrogatory would not pass muster with the court: the expense in time, money and effort for defendants to conduct another search in order to search for any additional information (that might not even exist) is too great to justify it.

Next, the court will not order defendants to seek any informtion from third party independent contractors who have their own counsel and over whom defendants deny having control. Plaintiff can seek this information directly from the third parties.

Finally, as defendants point out, denying plaintiff's motion does not prevent plaintiff from conducting its own search of the documents already provided by defendants. If this really is so important to plaintiff, then it will be worth the expense to do its own review.

In sum, plaintiff's motion is denied.

**161: Defendants' Motion To Extend Dispositive Motions Deadline**

Two months ago, Judge Conley extended the deadline to file dispositive motions to its breaking point, April 29, 2021, and noted that a party would have to show good cause to get a further extension. February 26, 2021 Text Only Order, dkt. 135. On April 16, 2021, defendants moved to extend this deadline to 30 days after they received the discovery requested in their motions to compel. (Dkt. 161). Plaintiff objects (dkt. 169), characterizing defendants' rationale as flimsy.

The court probably would have denied the motion to extend even if it had granted any of the pending discovery motions, but I have denied them all, so the *status quo ante* remains unchanged. There is no good cause to extend the deadline. As a courtesy to counsel, I will extend the deadline to next Tuesday, May 4, 2021, with 21/10 response/reply briefing to follow.

ORDER

It is ORDERED that:

(1) Defendants' motion to compel (dkt. 127) is granted in part as noted above and denied in all other respects.

(2) Defendants' motion to compel (dkt. 149) is denied.

(3) Plaintiff's motion to compel (dkt. 151) is denied.

(4) The parties will bear their own costs on these discovery motions.

(5) Plaintiff's motion to extend the deadline to file dispositive motions (dkt. 161) is granted in part: the new deadline is May 4, 2021.

Entered this 27th day of April, 2021.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge